**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**WALLBUILDER PRESENTATIONS,**

        Plaintiff,

  v.

**Case No. 1:23-cv-03695**

**RANDY CLARKE, in his official capacity as General Manager and Chief Executive Officer of the Washington Metropolitan Area Transit Authority,**

        Defendant.

---

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

David J. Hacker (admitted *pro hac vice*)
Jeremiah G. Dys (D.C. Bar # 90000678)
Ryan Gardner (admitted *pro hac vice*)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel: (972) 941-4444
dhacker@firstliberty.org
jdys@firstliberty.org
rgardner@firstliberty.org

Shannen W. Coffin (D.C. Bar # 449197)
Caitlin E. Daday (D.C. Bar # 90002918)
STEPTOE LLP
1330 Connecticut Ave., N.W.
Washington, D.C.  20036
Tel: (202) 429-3000
Fax: (202) 429-3902
scoffin@steptoe.com
cdaday@steptoe.com

Camille P. Varone (D.C. Bar # 1617624)
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave. N.W., Suite 1410
Washington, D.C. 20004
Tel: (202) 921-4105
cvarone@firstliberty.org

Arthur B. Spitzer (D.C. Bar # 235960)
Scott Michelman (D.C. Bar # 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: (202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Brian Hauss (D.D.C. Bar # NY0581)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
bhauss@aclu.org

David Cole (D.C. Bar # 438355)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, D.C. 20005
Tel: (212) 549-2611
dcole@aclu.org

*Counsel for WallBuilder Presentations*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 4

I.      WMATA and Its Advertising Guidelines. .......................................................... 4

II.     WMATA Refuses WallBuilders' Advertisements................................................ 5

III.    WallBuilders Sues To Enjoin Enforcement of Guidelines 9 and 12 ................ 13

ARGUMENT .............................................................................................................. 17

I.      THE COURT SHOULD GRANT SUMMARY JUDGMENT ON GUIDELINE 9 FOR
        THE SAME REASONS IT HAS ALREADY DETERMINED THAT GUIDELINE 9 IS
        CONSTITUTIONALLY UNREASONABLE .................................................... 17

        A.      The Court Can Convert Its Prior Preliminary Injunction Determination into a
                Summary Judgment Ruling for WallBuilders....................................... 17

        B.      The Court's Prior Legal Ruling that WMATA Guideline 9 Violates the First
                Amendment Was Correct and Should Be Applied Here ........................ 18

        C.      Guideline 9 Is Inconsistent With WMATA's Purpose Of Avoiding Community
                Discord And Protecting Public Safety ................................................. 26

II.     GUIDELINE 12 IS ALSO INCAPABLE OF REASONED APPLICATION AND
        SHOULD BE INVALIDATED ............................................................................ 29

III.    WALLBUILDERS HAS DEMONSTRATED A RIGHT TO A PERMANENT
        INJUNCTION .................................................................................................... 35

CONCLUSION............................................................................................................ 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almagamated Transit Union Loc. 1015 v. Spokane Transit Auth.*,
  929 F.3d 643 (9th Cir. 2019) ....................................................22

*Am. Freedom Def. Initiative v. Suburban Mobility Auth.*,
  978 F.3d 481 (6th Cir. 2020) ..........................................20, 21, 22, 23, 32

*Am. Freedom Def. Initiative v. WMATA*,
  901 F.3d 356 (D.C. Cir. 2018) ................................................22, 27

*Amoco Prod. Co v. Vill. of Gambell, Alaska*,
  480 U.S. 531 (1987)................................................................35

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................17

*Archdiocese of Wash. v. WMATA*,
  281 F. Supp. 3d 88 (D.D.C. 2017)..............................................31

*Archdiocese of Washington v. WMATA*,
  897 F.3d 314 (D.C. Cir. 2018) ............................................... *passim*

*Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*,
  975 F.3d 300 (3d Cir. 2020)....................................................22

*Does I through III v. District of Columbia*,
  232 F.R.D. 18 (D.D.C. 2005)...................................................18

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...............................................................36

*Kennedy v. Bremerton Sch. Dist.*
  597 U.S. 507 (2022)...............................................................26

*Malcolm v. Reno*,
  129 F. Supp. 2d 13 (D.D.C. 2000) ...........................................18

*Minn. Voters All. v. Mansky*,
  585 U.S. 1 (2018)............................................................. *passim*

*Oviedo v. WMATA*,
  948 F.3d 386 (D.C. Cir. 2020) .................................................17

ii

*PDK Labs. Inc. v. Ashcroft*,
    338 F. Supp. 2d 1 (D.D.C. 2004) ...........................................................................18

*Robinson-Reeder v. Amer. Council on Educ.*,
    571 F.3d. 1333 (D.C. Cir. 2009) ...........................................................................30

*United States v. Trump*,
    88 F.4th 990 (D.C. Cir. 2023) ...............................................................................26

*White Coat Waste Proj. v. Greater Richmond Transit Co.*,
    35 F.4th 179 (4th Cir. 2022) ...........................................................................22, 25

*Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Trans. Auth.*,
    89 F.4th 1337 (11th Cir. 2024) ...............................................................30, 31, 35

*Zukerman v. U.S. Postal Serv.*,
    961 F. 3d 431 (D.C. Cir. 2020) ...................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 54(b) .............................................................................................2, 30

Fed. R. Civ. P. 56(a) ..............................................................................................17

## INTRODUCTION

Plaintiff WallBuilder Presentations ("WallBuilders") respectfully moves for summary judgment against Defendant Randy Clarke[1] with respect to the only remaining claims in this case, Counts I and II, which allege that Washington Metropolitan Area Transit Authority ("WMATA") Commercial Advertising Guideline 9, WMATA's "issue ad" ban, is unreasonable under the First Amendment.  This court has preliminarily decided the controlling legal question as to Guideline 9's constitutionality, holding that that "Guideline 9 is incapable of reasoned application" and thus is unlawful.  *See* Doc. 38 (Opinion) at 46; *see also Minn. Voters Alliance v. Mansky*, 585 U.S. 1 (2018).  While that decision was made in the context of the Court's grant of a preliminary injunction barring enforcement of Guideline 9, there was nothing tentative about the Court's legal conclusion.  Because that decision was correct, there is really nothing left to decide.  WallBuilders is entitled to final judgment declaring Guideline 9 violates the First Amendment, both on its face and as applied to WallBuilders, along with a permanent injunction against enforcement of the Guideline to ads submitted by WallBuilders.

WallBuilders also moves for summary judgment against WMATA Guideline 12, the religious ad ban, on the same grounds (Count VI).  Guideline 12 is equally incapable of reasoned application under *Mansky*.  This Court previously dismissed WallBuilders' Guideline 12 challenge, but the Court may reconsider that non-final decision at any time before final

---

[1] Defendant Randy Clarke is the General Manager and Chief Executive Officer of WMATA, a government entity created by an interstate compact between Maryland, Virginia, and the District of Columbia.  The General Manager is WMATA's chief administrative officer and, subject to policy direction by the WMATA Board of Directors, is responsible for the operations, management and administration of WMATA.  WMATA Bylaws, Art. IV, § 6.  He is sued here only in his official capacity.

judgment.  Fed. R. Civ. P. 54(b).  WallBuilders' respectfully submits that the Court should

reconsider its dismissal of Count VI for the reasons stated herein.[2]

In short, some of the very reasons that support *granting* summary judgment for

WallBuilders on Guideline 9—particularly, WMATA's erratic and inconsistent approach to

incorporated websites—apply equally to Guideline 12.  Moreover, this Court recognized that

WMATA's purported reasons for concluding that WallBuilders' ads do not involve "promotion

of a religion, religious practice or belief" under Guideline 12 are "not immediately obvious,

particularly without further explanation by WMATA."  Doc. 38 at 43.  WMATA's approach to

WallBuilders own ads thus supports a ruling that Guideline 12 is facially incapable of reasoned

application.  Indeed, two of those ads—including one depicting George Washington in prayer

and both asking whether the founders were "Christian?"—are now running on WMATA ad

space, consistent with this Court's preliminary injunction barring application of WMATA's issue

ad ban.  But as this Court suggested, it is not "immediately obvious" how WMATA could

conclude that their pro-religious content is consistent with Guideline 12.  WMATA cannot

rationally explain how it allows these and other religious ads, while prohibiting the Archdiocese

of Washington's "Find the Perfect Gift" ads for Advent in *Archdiocese of Washington v.*

*WMATA*, 897 F.3d 314 (D.C. Cir. 2018).

As this Court acknowledged, the record in this case is "significantly more fulsome" than

was at issue in *Archdiocese*.  To add to that record, WallBuilders also submits additional, more

recent bus ads for Catholic University, which confirm that WMATA continues to permit

explicitly pro-religious ads to run, notwithstanding Guideline 12's purported ban.  One of those

---

[2] The remaining counts of the Complaint (with the exception of Counts I and II) were dismissed
by the Court in its prior order.  Plaintiffs do not seek reconsideration of the Court's dismissal of
those counts here, but reserve all rights to challenge those determinations on appeal.

ads, currently running at Metro Center rail station and reproduced here, simply announces "GOD IS OUR LIGHT."  *See* Plaintiffs' Statement of Undisputed Material Fact ("SoF") ¶ 66.



WMATA is currently running that ad (and others discussed below) at its Metro Center station despite Guideline 12's ban on ads that "promote" religion or religious belief.   WMATA previously defended its running of Catholic University's ads, which included the University's Latin motto (which translates as "God is my light"), because the motto was merely "incidental" to the ads' message.  These more recent ads render that argument—and any justification for the Catholic University ads under Guideline 12—entirely untenable.  The latest Catholic University ad campaign is further—indeed, all but conclusive—evidence that WMATA has no idea how to apply its own ban on ads that "promote" religion, religious belief, and practice.

Taken together, these reasons support reconsideration of the dismissal and summary judgment for WallBuilders on Guideline 12's religious ad ban.

## BACKGROUND

This Court is familiar with the relevant facts of this dispute, and WallBuilders relies on the same record that supported its request for a Preliminary Injunction, incorporating by reference its prior briefs in support of its motion for preliminary injunction and the declarations, exhibits, and supplemental materials filed in support of that motion.[3]

**I.    WMATA and Its Advertising Guidelines.**

WMATA derives significant annual operating revenue, projected to exceed $21 million in 2024, from selling advertisement space on and in buses, on and in subway cars, and in rail stations. *See* SoF ¶ 1. According to WMATA, this "[a]dvertising is a significant and growing component of Metro's (non-farebox) commercial revenues….These funds support operational expenses and help Metro stay within the legally mandated 3 percent annual subsidy growth rate." *See id.* ¶ 2.

A third party, Outfront Media, Inc. ("Outfront Media") administers sales of WMATA's ad spaces,[4] but WMATA makes the decisions to accept or deny proposed ads based on its *Guidelines Governing Commercial Advertising* (as revised in 2015) ("Guidelines"). SoF ¶¶ 3-4. Outfront Media refers an ad to WMATA's review panel when it determines that the ad potentially implicates a WMATA guideline. *Id.* ¶ 6. WMATA provides no additional guidance to Outfront Media as to how to determine compliance or whether to refer a proposed ad to the panel for review. *See id.* ¶¶ 5-9. Instead, Outfront Media uses its own discretion concerning which ads to refer to the review panel. Many of the ads referenced by WallBuilders—despite

---

[3]  For the convenience of the Court, however, and to prevent unnecessary and time consuming cross-referencing, it attaches those exhibits as part of this motion. It also includes the Second Declaration of Shannen W. Coffin, which addresses additional developments relevant to the request for summary judgment.

[4] *See Advertising Opportunities*, https://www.wmata.com/business/advertising/index.cfm.

raising obvious issues under the Guidelines—were not submitted by Outfront Media to WMATA's review panel.  *See* Declaration of Georgetta Nicol ("Nicol Decl.") ¶¶ 15-17.

WMATA allows a wide variety of advertising, but its Guidelines prohibit certain advertisements purportedly based on WMATA's concerns about community discord, discrimination, and public safety.  *See* SoF ¶ 11.  In particular, two of the Guidelines are at issue here.  First, WMATA's Guideline 9 prohibits any advertisement "intended to influence members of the public regarding an issue on which there are varying opinions."  WMATA Guideline 9; SoF ¶ 14.  Second, Guideline 12 prohibits "[a]dvertisements that promote or oppose any religion, religious practice or belief."  WMATA Guideline 12; SoF ¶ 14.

WMATA has not released any regulations to direct the application of those Guidelines, leaving enforcement entirely to WMATA's review panel (and Outfront Media) on a case-by-case basis.  SoF ¶¶ 15-16.

## II.  WMATA Refuses WallBuilders' Advertisements

WallBuilders is a 501(c)(3) non-profit organization dedicated to presenting the forgotten history of America's founding heroes.  SoF ¶ 18.  Following the example of the prophet Nehemiah, who led a movement to rebuild the walls of ancient Jerusalem to restore its strength and honor, WallBuilders seeks to rebuild the moral foundations of our nation by highlighting the country's historical legacy.  WallBuilders believes that historical education exerts a positive influence on public policy by fostering a Biblical worldview and encouraging Christians to engage in the civic arena.  *Id.* ¶¶ 18-20.  In WallBuilders' view, an integral part of educating the public about early American history is identifying the important role that faith, especially Christian faith, played in the nation's founding.  *Id.*

To accomplish these goals, WallBuilders has engaged in various public awareness and advertising campaigns.  *Id.* ¶ 19.  WallBuilders' website is one of its primary tools to educate the

public.  *Id.* ¶ 20.  On the site, WallBuilders provides an online library of resources, including videos, podcasts, free articles, and quotations from American historical figures.  *Id*.  At the end of 2022, WallBuilders began efforts to rebrand and relaunch the website, which it planned to roll out alongside an ad campaign beginning in June 2023.  *Id.* ¶ 21.

WallBuilders targeted the Washington, D.C. Metropolitan area to launch its campaign because of the region's unique audience—including large numbers of residents who work in politics, policy, and law, as well as residents and visitors interested in learning about American history and civic traditions.  *Id.* ¶ 38.  And it chose to advertise with WMATA because of the very high visibility of WMATA advertising throughout the metropolitan area, not only to people riding on WMATA buses and trains but also to people viewing exterior ads on passing buses.  *Id.* ¶¶ 38-39.

As part of this advertisement campaign, WallBuilders designed more than a dozen ads meant to showcase the views on the role of faith in American culture and government held by our nation's founders and historical leaders.  *Id.* ¶¶ 22-23.   Among the ads WallBuilders designed were ads featuring religiously-oriented quotations from select founders and other American historical figures, such as this trio of ads illustrating that Benjamin Rush, a signer of the Declaration of Independence, was a devout Christian:







*Id.* ¶ 28.  WallBuilders designed similar ads featuring quotes from John Adams (e.g., "The

Christian Religion Is, Above All the Religions that Ever Prevailed Or Existed in Ancient or

Modern Times, the Religion of Wisdom, Virtue, Equity & Humanity"), Sam Adams ("I rely

upon Jesus Christ for a Pardon of All of My Sins"), William Penn ("Those People Who Are Not

Governed By God Will Be Ruled By Tyrants"), George Washington ("To the Distinguished

Character of Patriot, It Should Be Our Highest Glory to Add the More Distinguished Character

of Christian"), and later Presidents Teddy Roosevelt, Franklin D. Roosevelt and Dwight D.

Eisenhower.  *See id.* ¶¶ 29-36.

Each ad contained a tagline inviting viewers to learn more about WallBuilders and the

role of Christianity and the Bible in the Founding and our nation's history:  "For more

information on how Christianity [or the Bible] influenced our nation's Founders [or Leaders] go

to WALLBUILDERS.COM, or find us on social media."  The ads also contained an embedded

QR code taking the viewer to WallBuilders' website.  *See id.*

WallBuilders did not include these historical quotation ads in its initial tranche submitted

to WMATA.  But for the prohibition of Guideline 12, it would have submitted some or all of

those historical quotation ads for placement on WMATA buses in its initial tranche.  *Id.* ¶ 37.

"WallBuilders still plans to run some or all of those ads if WMATA's Guideline 12 is

invalidated."  Supplemental Declaration of Timothy Barton ("Barton Supp. Decl.") ¶ 34; *see also*

Doc. 38 at 44 n.15.

    WallBuilders instead settled on a pair of ads featuring famous scenes from the nation's

early history. The first ad featured Henry Brueckner's late-1800s painting of George Washington

kneeling to pray at Valley Forge.[5]  The second shows Howard Chandler Christy's 1940 painting

of the signing of the United States Constitution at Independence Hall, which currently hangs in

the U.S. Capitol.[6]  On each ad, WallBuilders added its logo in the top left corner and a QR code

in the bottom right corner leading to the relaunched website.  In order to invite viewers to learn

about the role of Christianity in the nation's founding, both ads' text read in prominent lettering:

"CHRISTIAN?"  with a smaller sub-heading reading: "TO FIND OUT ABOUT THE FAITH

OF OUR FOUNDERS, GO TO WALLBUILDERS.COM."  SoF ¶¶ 24-26.

    The originally proposed pair of ads, as submitted to WMATA, are reproduced below:

---

[5] *See* Henry Brueckner, *The Prayer at Valley Forge*, as engraved by John C. McRae (1889), https://www.loc.gov/pictures/item/96521655/.

[6] *See* Howard Chandler Christy, *The Signing of the Constitution* (1940), https://www.aoc.gov/explore-capitol-campus/art/signing-constitution.





In May 2023, WallBuilders contacted WMATA to purchase ad space for the two advertisements. *Id.* ¶ 40. WMATA refused WallBuilders' request to place its paid ad campaign, citing, without further explanation, Guideline 9, the WMATA's issue ad ban. *Id.* ¶ 47. WallBuilders requested clarification, noting that WMATA's Guideline 9 was vague and effectively excluded all religious speech. WMATA did not respond to WallBuilders' request. *Id.* ¶¶ 48-49.

WallBuilders went back to the drawing board. Without the benefit of any further guidance from WMATA, WallBuilders sought to redesign its ads to satisfy WMATA's vague

Guidelines. Guessing that the explicit mention of Christianity was the "issue" of controversy that caused WMATA to reject its proposed ads, WallBuilders redesigned the ads to keep the two images but cut nearly all of the text. *Id.* ¶ 51. The revised ads, as submitted to WMATA in September 2023, contained the original images with only the organizational logo, the QR code linking to WallBuilders' website, and the text "VISIT WALLBUILDERS.COM" in the bottom right corner. *Id.* The embedded QR code directs viewers to a page on WallBuilders' website collecting famous quotations from the Founders on the role of religion in the founding of our country. *Id.* The redesigned ads are reproduced below:





WMATA rejected both revised ads.  *Id.* ¶ 52.  Without providing any detailed explanation, WMATA determined that the revised ads impermissibly "intended to influence members of the public regarding an issue on which there are varying opinions" under Guideline 9.  *Id.*  ¶¶ 52-55.  WMATA did not identify the "issue" that caused the rejection of the stripped-down advertisements.

WMATA's advertising agent, Outfront Media, suggested in discussions with WallBuilders, however, that WMATA may have had concerns less about the content of the advertisements themselves, and more about the viewpoints expressed on the website to which the ads referred. *Id.* ¶ 54.  Outfront Media suggested that with the website address and QR code removed, WallBuilders' ads might pass muster with WMATA.  *Id.*  WallBuilders declined to remove them because stripping the ads of all references to WallBuilders but the organization's name and logo would have negated any possible promotional and educational benefit WallBuilders sought by running its ads.  *Id.*

III.    **WallBuilders Sues To Enjoin Enforcement of Guidelines 9 and 12**

WallBuilders filed its Complaint in this case on December 12, 2023, naming as defendant WMATA's General Manager and Chief Executive Officer, Randy Clarke, in his official capacity only.  *See* Doc. 1 (Complaint).  WallBuilders sought declaratory and injunctive relief against enforcement of WMATA's Advertising Guideline 9 (the issue ad ban) and Guideline 12 (the religious ad ban).  WallBuilders challenged both ad bans for violating the First Amendment in two respects—that they were unreasonable in that they failed to clearly delineate what was prohibited and what was allowed by their bans and that they were not viewpoint neutral.

WallBuilders challenged Guideline 9's issue ad ban as unconstitutional both on its face and as applied.  As to Guideline 12, WallBuilders brought a facial challenge, alleging that "While WMATA did not include Guideline 12 in its stated reasons for rejecting WallBuilders' advertisements, on information and belief, WMATA would reject WallBuilders' advertisements under Guideline 12."  *See, e.g.*, Doc. 1 ¶ 126.  Moreover, "the very existence of Guideline 12 chills WallBuilders' right to express its religious viewpoint on issues critical to its educational mission, especially as that speech relates to the history of the founding of the United States."  *Id.*

WallBuilders simultaneously moved for a preliminary injunction against enforcement of WMATA's issue ad and religious ad bans.[7]  WMATA opposed WallBuilders' motion for preliminary injunction and further moved to dismiss the Complaint for failure to state a claim as to each count and, as to the counts relating to Guideline 12, for lack of standing.

---

[7] In response to a request by WMATA to remove one of the advertisements highlighted in WallBuilders' preliminary injunction request (because it was actually an ad run inside WMATA's Metro Center station on space owned separately by a local developer), WallBuilders later filed a corrected memo in support of its preliminary injunction motion, which the district court relied on in granting in part and denying in part the motion.  References to the PI motion below are to that corrected memorandum.  *See* Doc. 20-1 (Corrected Memorandum).

In an order dated May 21, 2024, the district court granted in part and denied in part WallBuilders' request for a preliminary injunction and WMATA's motion to dismiss. It granted WallBuilders' request for a preliminary injunction to prevent WMATA from enforcing against it Guideline 9's "issue ad" ban, concluding that Guideline 9 "does not provide objective, workable standards" to govern its application and is thus not "capable of reasoned" application under *Mansky*. *See* Doc. 38 at 22-35. The Court summarized its ruling on the facial problems with the Guideline:

> In sum, nothing in Guideline 9's text answers basic questions about its reach, and the "indeterminate scope" of Guideline 9 is not "clarify[ied]" or "saved" by any official guidance. *Mansky*, 585 U.S. at 18. In fact, WMATA offers no definitions and no guidance on how to define an "[a]dvertisement intended to influence members of the public regarding an issue on which there are varying opinions," and no instruction on how to apply the guideline, including whether related content, such as information on websites referenced in the ad, should be considered. Enforcement of Guideline 9 is thus left to the individual reviewers to determine, on a case-by-case basis, what constitutes an "[a]dvertisement intended to influence" and what constitutes "an issue on which there are varying opinions." Such determinations "require[] a government decision-maker to maintain a mental index' of all the issue on which varying opinions exist—which, in turn, requires the decisionmaker to know not only the issues on which opinions differ, but also the precise degree to which opinions differ—an enterprise the D.C. Circuit has said is "not reasonable."

Doc. 38 at 29-30. (citing *Zukerman v. U.S. Postal Serv.*, 961 F. 3d 431, 450 (D.C. Cir. 2020) (quoting *Mansky*, 585 U.S. at 19)).

The Court concluded the facial shortcomings with the rule's text are borne out by "a plethora of examples" in the record demonstrating WMATA's inconsistent application of the Guideline. *Id.* at 32. WMATA's application, the Court concluded, "has been far from consistent, with a history of regularly publishing ads that could fairly be described as advocating for an "issue on which there are varying opinions." *Id.* at 31-32. Though the court reviewed

14

each of the examples cited by WallBuilders, it was "sufficient" to discuss only three of the many examples to illustrate the problems with the Guideline.  *Id.* at 32-35 (discussing Plan B Instacart ad, D.C. Health Covid Vaccination Ad, and Power to the Patients ad).  While recognizing that "WMATA is permitted to retain considerable discretion in evaluating the intent and purpose of an ad," this discretion "must be coupled with objective, workable standards."  *Id.* at 35.  It thus concluded that "the utterly undefined use of the phrase '[a]dvertisements intended to influence . . . regarding an issue on which there are varying opinions,' coupled with the lack of any definitions or official guidance and WMATA's inconsistent application of Guideline 9, makes clear *that Guideline 9 is not a reasonable restriction on speech*."  *Id.* (emphasis added).

Turning to Guideline 12, the Court rejected WMATA's standing challenge, concluding that WallBuilders had adequately demonstrated an imminent threat of injury from Guideline 12. It reasoned that WallBuilders had adequately pled future conduct that was "arguably proscribed" by Guideline 12.  *Id.* at 42-43.  The ads that it submitted—for example, showing George Washington kneeling in prayer, asking whether the Founders were "Christian?" and inviting viewers to learn more about the "Faith of the Founders" at WallBuilders' redesigned website "can fairly be read to promote the 'religious principles' allegedly adopted by the Founders and thus foundational to the nation" and are thus "arguably" prohibited by Guideline 12.  *Id.* at 43. The court also noted that, even if the ads that it submitted were insufficient to support standing, WallBuilders' standing was independently established by evidence of the twelve additional ads that it did not submit in light of Guideline 12, but "still plans to run . . . if WMATA's Guideline 12 is invalidated."  *Id.* at 44 n.15.

In so holding, the court cast doubt on WMATA's assertion "that 'promoting [a] view of the role of Christianity in American history in support of its belief that Christian faith should

have a role in government' is 'quite different from promotion of a religion, religious practice or belief,'" reasoning that "this 'differen[ce]' is not immediately obvious, particularly without further explanation by WMATA."  *Id.* at 43.

Turning to the merits, the Court held, however, that WallBuilders' reasonableness and viewpoint discrimination challenges to Guideline 12 "are foreclosed by *Archdiocese of Washington v. [WMATA]*, in which the D.C. Circuit squarely held that Guideline 12, by 'prohibit[ing] religious and anti-religious ads in clear broad categories,' is viewpoint neutral, and is reasonable in light of WMATA's previous 'security concerns from [] controversial ad[s]' and its 'compelling interest in ensuring the safety and reliability of its transportation services and operating in a manner that maintains the attractiveness of its service to a multi-cultural, multi-ethnic, and religiously diverse ridership.'"  *Id.* at 44 (citations omitted).

The court declined WallBuilders' invitation to revisit the reasonableness of Guideline 12 on the more developed record before it, acknowledging that, though the record is "significantly more fulsome" than in *Archdiocese*, the court did not think that sufficient to change the result. *Id.* at 45-46.  The court thus dismissed the counts of the Complaint challenging Guideline 12 (Counts V and VI) under *Archdiocese* and denied the request for a preliminary injunction as moot in light of that dismissal.  *Id.*

Since this Court's preliminary injunction, WMATA informed WallBuilders that it would consider running WallBuilders' ads in light of the Court's order.  WMATA requested that WallBuilders identify which ads it wanted to run.  WallBuilders informed WMATA (through counsel) that it would like to run the two original ads that it submitted at this time, and consider additional ads later, at an appropriate time.  WallBuilders worked with Outfront Media to design the advertisements and paid the appropriate fees.  WallBuilders ads—the two ads with the

"Christian?" question—have recently begun running on WMATA buses and will do so into July

2024.  *See* Second Declaration of Shannen W. Coffin ¶ 10.

<u>**ARGUMENT**</u>

**I.     THE COURT SHOULD GRANT SUMMARY JUDGMENT ON GUIDELINE 9 FOR THE SAME REASONS IT HAS ALREADY DETERMINED THAT GUIDELINE 9 IS CONSTITUTIONALLY UNREASONABLE**

> **A.     The Court Can Convert Its Prior Preliminary Injunction Determination into a Summary Judgment Ruling for WallBuilders**

This Court has already made a legal determination that Guideline 9 violates the First

Amendment.  Though reached in the context of a preliminary injunction, that decision is not

couched in tentative terms (*see, e.g.*, Doc. 38 at 46 (concluding that "Guideline 9 is incapable of

reasoned application"), and there is really nothing left for the Court to decide here.  But even if it

were merely a preliminary view of the merits, the Court should reach the same conclusion here,

based on the same undisputed record of WMATA's own policy and enforcement practices that

was before the Court on WallBuilders' motion for preliminary injunction. The Court should thus

grant summary judgment for WallBuilders, convert its preliminary injunction to a permanent

injunction, and grant a final declaratory judgment that WMATA's Guideline 9 is incapable of

reasoned application and is thus unconstitutional under *Mansky* and its progeny.

Summary judgment is appropriate in these circumstances.  Under Rule 56, summary

judgment shall be granted if the evidence before the Court shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Oviedo v.

WMATA*, 948 F.3d 386, 392 (D.C. Cir. 2020).  Because this Court's earlier ruling is correct, it

can convert its preliminary injunction holding into a final summary judgment ruling as long as it

"carefully fits its previous findings of law or fact from a preliminary injunction to the summary

judgment standard." *PDK Labs. Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 6 (D.D.C. 2004).

This Court should grant summary judgment to WallBuilders, based on its prior

preliminary injunction holding, because "[n]othing in the summary judgment pleadings

effectively challenge[d] the findings supporting the . . . preliminary injunction or the reasons for

it." *Malcolm v. Reno*, 129 F. Supp. 2d 13, 13 (D.D.C. 2000); *PDK Labs*, 338 F. Supp. 2d at 6

(summary judgment is "especially appropriate" if party "fails to adduce new evidence suggesting

that the court should revisit its grant of a preliminary injunction") (citing *Remed Recovery Care*

*Ctrs. v. Township of Willistown, Chester Cty., Pa*., 36 F. Supp. 2d 676, 682 n. 5 (E.D. Pa. 1999)

("Absent presentation of new evidence, a district court may convert an opinion granting a

preliminary injunction into one granting a permanent injunction by expressly recasting its

findings and conclusions in terms of the proper legal standard applicable to a permanent

injunction.")); *Does I through III v. District of Columbia*, 232 F.R.D. 18, 32 (D.D.C. 2005),

*vacated in part on other grounds by Doe ex rel. Tarlow v. District of Columbia*, 489 F.3d 376

(D.C. Cir. 2007).

The relevant facts about the circumstances of WallBuilders' ads and the range of relevant

ads that WMATA has run showing its inconsistent approach to Guideline 9 remain undisputed.

WallBuilders is entitled to judgment as a matter of law for the same reasons that the Court has

already determined.

## B.   The Court's Prior Legal Ruling that WMATA Guideline 9 Violates the First Amendment Was Correct and Should Be Applied Here

In granting the preliminary injunction, this Court reasoned that that WMATA's Guideline

9 lacks "objective and workable" standards and is thus "incapable of reasoned application" for

the same reasons that Minnesota's political apparel ban was invalidated by the Supreme Court in

*Mansky*, 585 U.S. at 21-23.  *See* Doc. 38 at 25, 46.  WallBuilders set forth the applicable

constitutional analysis in detail in its motion for preliminary injunction, and those arguments are

incorporated by reference here.  This Court should grant summary judgment for the same reasons

it granted a preliminary injunction.

In sum, in order to pass the test of constitutional reasonableness under *Mansky*, "the

government 'must be able to articulate some sensible basis for distinguishing what may come in

from what must stay out' under the rule."  *Zukerman*, 961 F.3d at 447 (quoting *Mansky*, 585 U.S.

at 16).  Applying that standard, *Mansky* invalidated a Minnesota law that prohibited the wearing

of any "political" badges or apparel at voting places, concluding that the regulation failed to

draw a reasonable line because of its "unmoored use" of the term "political," a term that the

Court held incapable of reasoned application.  585 U.S. at 16.  "Because the term 'political'

admits of such capacious readings, a blanket prohibition on 'political' apparel has an

'indeterminate scope.'"  *Zukerman*, 961 F.3d at 448 (quoting *Manksy*, 585 U.S. at 17-18).  The

"open-ended" and undefined term permitted decisionmakers to apply their "own politics" in

determining what was impermissible "political" apparel.  *Manksy*, 585 U.S. at 21-22.  The

*Mansky* Court found support for its conclusion from Minnesota's "haphazard interpretations" in

its application of the ban.  *Id.* at 16-17; *see Zukerman*, 961 F.3d at 448 (concluding that USPS

"political" stamp prohibition was constitutionally unreasonable, applying *Mansky*).

That is precisely the problem with Guideline 9, as this Court held after reviewing the text

and WMATA's inconsistent application.  In granting the preliminary injunction, this Court held

that *the text* of Guideline 9 was "as vague, if not more so, than the ban on 'political' apparel in

*Mansky*.  Doc. 38 at 25.  "Nothing in the text of Guideline 9, which offers no definitions for any

of its 'unmoored' terms, provides any, much less objective and workable, standards."  *Id.*

19

The Court reached that textual conclusion for several reasons.  First, the word "issue" has

"a range of meanings with expansive reach—so much so that even dictionary definitions, rather

than aid, only raise more questions than they answer."  *Id.* (comparing Merriam-Webster, Oxford

English Dictionary, and Black's Law Dictionary definitions); *see* Doc. 20-1 at 17, 19-20; Doc.

29 at 3-4.  Second, these problems of imprecision are "further augmented by Guideline 9's use of

the ill-defined phrase 'varying opinions.'"  Doc. 38 at 26; *see* Doc. 20-1 at 17-18; Doc. 29 at 4-5.

Thus, for instance, dictionary definitions of the term "and Guideline 9 itself, fail to address basic

parameters, such as how many people must have differing opinions and how significant must the

differences be to qualify as 'varying opinions'?"  Doc. 38 at 25-27*; see* Doc. 20-1 at 17-18; Doc.

29 at 4-5.  Quoting Chief Judge Boasberg, the Court noted that "[v]irtually anything can

constitute an 'issue' on which opinions vary—from Yankees versus Red Sox to the correct

pronunciation of 'tomato.'"  *See* Doc. 38 at 26 (quoting *White Coat Waste Proj. v. Wash. Metro.*

*Area Transit Auth.*, No. 23-cv-1866 (JEB), 2024 WL 68256, at *9 (D.D.C. Jan. 5, 2024) and

citing also *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 497 (6th Cir.

2020) ("*Suburban Mobility Auth.*") ("There are plenty of nonpolitical issues on which members

of society disagree.")).

The Court then rejected WMATA's efforts to explain away the many examples of its

erratic application of Guideline 9 and otherwise distinguish *Mansky*.  The Court rejected

WMATA's argument that the many commercial advertisements submitted to the Court by

WallBuilders did not (and could not) violate its issue ad ban, reasoning that "commercial ads

intended to influence consumers to purchase a particular good or service may provoke 'varying

opinions' among viewers on the issue of whether to do so, and may, either expressly or

implicitly, invoke issues of public debate."  *Id.* at 26-27 (citing, *e.g.*, *Suburban Mobility Auth.*,

978 F.3d at 496 (asking whether Nike's ad featuring a kneeling Colin Kaepernick with the caption "Believe in something. Even if it means sacrificing everything" would be covered by a "political" ban); *Zukerman*, 961 F.3d at 450 (same as to "a Fox News campaign featuring Tucker Carlson Tonight," which has "recognizable political views" (citation omitted))); *see also* Doc. 20-1 at 18; Doc. 29 at 13-16.  The Court concluded that WMATA "offers no textual hook for this commercial/non-commercial distinction, and even if such distinction existed, the text simply leaves unclear and undefined when an 'issue' would cross the line to fall under the prohibition." Doc. 38 at 27.

The Court also rejected WMATA's argument that the text of Guideline 9 contains a "limiting standard" that distinguishes it from the political apparel ban in *Mansky*.  "Contrary to WMATA's suggestion," the Court reasoned, "the requirement that 'advertisements' must be 'intended to influence members of the public' is an insufficient limiting standard" that is "even less narrow than that offered in *Mansky*, given that Guideline 9 applies to any 'issue on which there are varying opinions,' not only issues related to 'voting'" as in *Mansky*.  *Id.* at 28; *see* Doc. 29 at 3-4.

In short, "nothing in Guideline 9's text answers basic questions about its reach, and the 'indeterminate scope' of Guideline 9 is not 'clarif[ied' or 'saved' by any official guidance." Doc. 38 at 29.  "WMATA offers no definitions and no guidance on how to define an '[a]dvertisement intended to influence members of the public regarding an issue on which there are varying opinions,' and no instruction on how to apply the Guideline, including whether related content, such as information on websites referenced in the ad, should be considered."  *Id.*

The result here is that "[e]nforcement of Guideline 9 is thus left to individual reviewers to determine, on a case-by-case basis, what constitutes an '[a]dvertisement intended to influence'

and what constitutes 'an issue on which there are varying opinions.'" *Id.* at 29-30.  This, too, runs afoul of *Mansky*, as such determinations "'require[] a government decision-maker to maintain a mental index' of all the issues on which varying opinions exist—which, in turn, requires the decisionmaker to know not only the issues on which opinions differ, but also the precise degree to which opinions differ—an enterprise that the D.C. Circuit has said is 'not reasonable.'" *Id.* at 30 (citing *Zukerman*, 961 F.3d at 450).  The Court thus "join[ed] the many courts"—indeed, all of the Courts of Appeals that have considered the issue after *Mansky*— "that have rejected similar phrases as constitutionally suspect" *Id.* at 30-31 (citing cases).[8]

Having concluded that the text of Guideline 9 offers no limiting principle, the Court then turned to WMATA's *application* of the Guideline, which it concluded would "certainly be information as to whether it is capable of reasoned application." *Id.* at 31 (citing *Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 373 (D.C. Cir. 2018) ("*AFDI*"); *Archdiocese*, 897 F.3d at 330 ("[A] challenged regulation may be unreasonable, regardless of the reasons for its adoption, if it is inconsistently enforced.")).  The Court concluded that the evidence before it showed that "WMATA's application of Guideline 9 has been far from consistent, with a history of regularly publishing ads that could fairly be described as advocating for an 'issue on which there are varying opinions.'" *Id.* at 31-32.  It concluded that WallBuilders had submitted a "plethora of examples" of such erratic application. *Id.* at 32; *see* Doc. 20-1 at 22-30; Doc. 29 at 8-13.  It concluded, however, that three examples from the record were "sufficient" to demonstrate WMATA's inconsistent and unmoored application of Guideline 9. *Id.* at 32-35

---

[8] *See, e.g.*, *Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 316 (3d Cir. 2020); *White Coat Waste Proj. v. Greater Richmond Transit Co.*, 35 F.4th 179, 199 (4th Cir. 2022); *Suburban Mobility Auth.*, 978 F.3d at 495-96; *see also Almagamated Transit Union Loc. 1015 v. Spokane Transit Auth.*, 929 F.3d 643, 648 (9th Cir. 2019).

(discussing Instacart's Plan B contraception ad, DC Public Health's Covid Vaccine ad, and Power to the Patient's ad "advocating for lower and more transparent hospital pricing."); *see also* SoF ¶¶ 80, 86, 91.

These and other ads referenced elsewhere in the Court's opinion more than adequately support the Court's conclusion that Guideline 9 is incapable of reasoned application.  Elsewhere in the opinion, the Court referred to Planned Parenthood of Metropolitan Washington's ad inviting the public to "ask about" its "Gender Affirming Care" and "Sexual Reproductive Health Care," *i.e.*, abortion services.  The Court used this advertisement as an example of ads that might arguably promote commercially available health care services, *while also* promoting divisive public issues like abortion and "gender affirming care."  Doc. 38 at 27 (comparing, *e.g.*, *Suburban Mobility Auth.*, 978 F.3d at 496).  Especially given that the ad invites viewers to visit Planned Parenthood of Metropolitan Washington, D.C.'s website, where it explicitly advocates for Planned Parenthood's well-known position on the highly divisive issue of abortion, it would be difficult to find an ad that, by all appearances, would more blatantly violate the spirit and letter of Guideline 9's issue ad ban, yet it was inexplicably allowed to run by WMATA on its buses.  *See* Doc. 34 at 2-3; SoF ¶¶ 87-90.



Similarly, the Court's opinion references World Beyond War's "Peace on Earth" ad, reproduced below (*see* SoF ¶ 92):



The Court notes that WMATA sought to justify this ad's message as "hardly controversial or divisive," yet the opinion correctly notes that the website referenced in the ad advocates against

24

"arms manufacturing, weapons stockpiling, and the expansion of military bases."  Doc. 38 at 34. This is yet another example of blatant issue advertising run on WMATA ad space.

All of these examples and the many more addressed in Plaintiff's Motion for Preliminary Injunction and incorporated herein (*see, e.g.*, SoF ¶¶ 56-100) support the conclusion that WMATA Guideline 9 is unreasonable.  "Although '[p]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity,' here, WMATA's 'difficulties with its restriction go beyond close calls on borderline or fanciful cases.'"  Doc. 38 at 35. (citation omitted).  "Put simply, the utterly undefined use of the phrase '[a]dvertisements intended to influence . . . regarding an issue on which there are varying opinions,' coupled with the lack of any definitions or official guidance and WMATA's inconsistent application of Guideline 9, makes clear that Guideline 9 is not a reasonable restriction on speech."  *Id.*

Nothing that WMATA says now can change the conclusion that Guideline 9 is unreasonable.  Because this Court's prior opinion supports the same result on the undisputed summary judgment record, the Court should enter summary judgment for WallBuilders on Counts I and II.[9]

---

[9] Counts I and II present a facial and an as-applied challenge, respectively, based on *Mansky*, and are thus identical in substance.  Several lower courts have viewed *Mansky* as purely a question of facial constitutional validity—that "incapable of reasoned application" is a determination that the regulation *cannot* on its face be applied consistently with the First Amendment.  *See, e.g*., *Greater Richmond Transit Co*., 35 F.4th at 204-05.  Thus, the Court's conclusion that Guideline 9 is "incapable of reasoned application" supports the facial invalidity of the Guideline. WallBuilders also brought an as-applied challenge as a cautionary measure because WMATA actually applied Guideline 9 to WallBuilders' ads.  The precise characterization of the relief granted (facially unconstitutional v. unconstitutional as applied) is not critical.  What matters is that the Court concludes that Guideline 9 is invalid under *Mansky* and that it cannot be applied to WallBuilders.

### C.   Guideline 9 Is Inconsistent With WMATA's Purpose Of Avoiding Community Discord And Protecting Public Safety

As shown above, Guideline 9 is unreasonable and thus invalid based on lack of clear and consistent standards on its face and as interpreted by WMATA.  This is enough, in itself, to find Guideline 9 invalid.  But a regulation can also be unreasonable where is not "consistent with the government's legitimate interest in maintaining the property for its dedicated use."  *Zukerman*, 961 F.3d at 447 (citation omitted).   Guideline 9 fails this independent reasonableness inquiry as well.  It is inconsistent with WMATA's stated purpose in limiting its advertising space—to avoid community discord and protect the public safety.

At the outset, "avoiding community discord" and otherwise upset listeners is not a sufficient justification for limiting protected speech under the First Amendment, as it would grant a "heckler's veto" to those who disagree with the message.  *See Kennedy v. Bremerton Sch. Dist*. 597 U.S. 507, 543 n.8 (2022) ("Nor under our Constitution does protected speech or religious exercise readily give way to a 'heckler's veto.'"); *United States v. Trump*, 88 F.4th 990, 1015 (D.C. Cir. 2023) (heckler's veto doctrine "prohibits restraining speech on the grounds that it '*might* offend a hostile mob' hearing the message, or because its audience might express 'hostility to' the message") (citations omitted), *reh'g denied*, No. 23-3190, 2024 WL 252746 (D.C. Cir. January 23, 2024).  A policy that simply assumes certain categories of speech, like "issue" or "religious" speech, will provoke community discord and public safety concerns does little more than grant the mob a veto over speech with which some members disagree.  And it is, inherently, a policy of viewpoint discrimination, because certainly speech about issues of public debate or religion, apparently deemed anodyne by WMATA—such as "Peace on Earth," *see* SoF ¶ 92) or "God is our Light," (*see* SoF ¶ 66)—is assumed not to provoke discord.  Thus, the stated

purposes of WMATA's guidelines are themselves constitutionally suspect under the First Amendment.

But even if WMATA's stated goals were legitimate, the record here demonstrates that Guideline 9 does not serve them. *See AFDI*, 901 F.3d at 370 (guidelines must be "consistent with the government's legitimate interest in maintaining the property for its dedicated use"). As this Court reasoned in its opinion, the sheer volume of ads addressing issues of public debate that Guideline 9 actually allows through its imperfect filters severely undermines any stated interest in preventing community discord, discrimination, and promoting public safety—as any one of those many permitted ads might spark disagreement, even sharp disagreement, among members of the public. *See Mansky*, 585 U.S at 21-22; *Zukerman*, 961 F.3d at 447 ("[T]he risks of arbitrary or inconsistent enforcement will tend to undermine the very governmental interests that the regulation in question was meant to advance."). "Put differently, concluding that Guideline 9 does not provide objective, workable standards—as the Court does here, for the reasons explained below—may necessarily mean that Guideline 9 is inconsistent with the forum's purpose." Doc. 38 at 23.

Moreover, WMATA's *own* use of the forum to display governmental ads addressing controversial issues—as with WMATA's Earth Day contest (*see* Doc. 20-1 at 26; SoF ¶ 94) or D.C. Health's COVID vaccine ad, discussed in this Court's prior opinion (Doc. 38 at 33; SoF ¶ 80)—suggests that WMATA's concern for preventing community discord is just a pretext for preventing controversial ads with which it might disagree. Indeed, a recent Metro advertisement, apparently sponsored by an organization called the "Black Coalition Against Covid-19" and bearing WMATA's logo, also entreats its riders to wear a mask in public "[b]ecause I miss seeing my Nana" (*see* SoF ¶ 81).



Whether Metro co-sponsored this ad or merely authorized its logo to be used,[10] the fact

that it allows an ad on controversial topics like the effectiveness of masking to stop the spread of

COVID to be run with its logo suggests that as long as Metro approves of an advertisement's

message, a divide in public opinion on its subject matter is beside the point.  WMATA's

inconsistent concern for public reaction to the message of an ad does not promote, but actively

undermines, WMATA's stated purpose for its issue ad ban.

        Finally, as this Court observed, WMATA's Metro Center station includes advertising

space that is not even controlled by Metro and thus not subject to WMATA's Guidelines.  SoF

¶¶ 98-99.  Thus, with respect to the Brennan Center ad demanding term limits for Supreme Court

Justices run "on a private billboard owned by Douglas Development and operated by Branded

---

[10] WMATA Guideline 7 provides that: "Use of Metro graphics or representations in advertising is subject to approval by WMATA."  *See* WMATA Commercial Advertising Guidelines, https://www.wmata.com/about/records/upload/Advertising_Guidelines.pdf.

Cities at the Metro Center station," the Court found "persuasive WallBuilders' observation that '[n]o reasonable Metro consumer could know that . . . this display was not owned or operated by WMATA" and "[t]he fact that advertisements addressing controversial issues are displayed on privately owned billboards—alongside advertisements run on Metro-owned billboards—within a Metrorail station creates consumer confusion and strongly undermines WMATA's position that its Guidelines are needed to prevent community discord and promote public safety in the Metro system.'" Doc. 38 at 23 n.6.[11]

The Court nevertheless concluded that the holding of *AFDI*, "though perhaps distinguishable on the record in this case," would not be disturbed here. *Id.* at 23 n.6. The Court observed that, at the preliminary injunction stage, "WallBuilders does not meaningfully argue that Guideline 9 is inconsistent with the forum's purpose." *Id.* To be clear, WallBuilders now argues fully that Guideline 9 does not serve, but rather undermines, WMATA's questionable objective of preventing community discord and protecting public safety by prohibiting controversial speech. WallBuilders urges the Court to distinguish *AFDI* and hold, based on the record before it in this case, that Guideline 9 does not serve, but rather undermines, WMATA's questionable objective of preventing community discord and protecting public safety by prohibiting controversial speech.

## II.   GUIDELINE 12 IS ALSO INCAPABLE OF REASONED APPLICATION AND SHOULD BE INVALIDATED

For similar reasons that this Court invalidated Guideline 9, it should conclude that Guideline 12—the religious advertising ban—is incapable of reasoned application under the

---

[11] The Court also observed that issue advertisements on bikeshare and wallscape ads in the Metro D.C. area were inconsistent with the purpose of Guideline 9. Doc. 38 at 23 n.6. WallBuilders understands that those ad spaces are not owned or operated by WMATA. WallBuilders does not rely on any bikeshare or wallscape ads in its argument.

principles of *Mansky*.  *See Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Trans. Auth.*, 89 F.4th 1337, 1348-49 (11th Cir. 2024) (holding invalid under *Mansky* transit ban on "[a]dvertisements that primarily promote a religious faith or religious organization").  While the Court declined to do so in dismissing Count VI in its May 21, 2024 Order, Fed. R. Civ. P. 54(b) permits the Court to reconsider that order at any time before final judgment. *See, e.g., Robinson-Reeder v. Amer. Council on Educ.*, 571 F.3d. 1333, 1337 (D.C. Cir. 2009) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . .  does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims.") (citation omitted).  Without belaboring the point, WallBuilders respectfully requests that it should do so.  *See also* Doc. 20-1 at 31-34; Doc. 29 at 16-19.

First, some of the same reasons that supported this Court's conclusion that Guideline 9 is invalid apply equally to Guideline 12.  The Court observed, for example, that WMATA's determination of when to consult outside material referenced in an ad, especially websites, was not guided by any clear rules.  *See* Doc. 38 at 29 n.8.  "[I]f WMATA had a policy of always looking at websites referenced in ads, its process would be considerably more consistent." *Id.*  But it does not.  "Here, the record is unclear whether Outfront, the only entity to review every ad submitted to WMATA, ever looks at websites or QR codes embedded in ads, and while WMATA purportedly 'may' review any website or QR code referenced in a proposed ad, such a review is neither consistently performed by the Panel nor triggered by a well-articulated process, let alone a process transparent to the public." *Id.* (citation omitted).

This shortcoming in WMATA's process is equally evident in its application of Guideline 12.  Thus, WMATA allows advertisements for the Museum of the Bible, despite an incorporated website, reviewed by WMATA, that invites visitors to "engage with the transformative power of

the Bible." *See* SoF ¶ 100. It further runs ads for theatrical performances—such as *Jesus Christ Superstar* and *The Book of Mormon*—that themselves address major religions, including Christianity and the Church of Jesus Christ of the Latter Day Saints, and even satirize religious beliefs. *See* SoF ¶¶ 57, 61.[12] But, at the same time, it rejected ads from the Archdiocese of Washington, in part, because its website "provided schedules for local masses," *see Archdiocese of Wash. v. WMATA*, 281 F. Supp. 3d 88, 97 (D.D.C. 2017), *aff'd*, 897 F.3d 314 (D.C. Cir. 2018), and "contained substantial content promoting the Catholic Church," including "a link to 'Parish Resources,'" "a way to 'Order Holy Cards,'" and "videos and 'daily reflections' of a religious nature." *Compare Archdiocese*, 897 F.3d at 467 *with* Catholic Univ. Website, Campus Ministry, https://ministry.catholic.edu/mass-times/index.html (providing mass times for campus masses); SoF ¶¶ 63, 68. This inconsistent approach to underlying content incorporated into the ads dooms Guideline 12 just as it does Guideline 9. *See Suburban Mobility*, 978 F.3d at 495 (asking whether a political ban was limited to the "ad's four corners" or whether it considered "related content like information on websites").

---

[12] The Court's opinion downplays these advertisements, adopting the District Court's reasoning in *Archdiocese* that "the fact that there will be satire presented onstage does not transform a poster publicizing the existence of the performance or the availability of tickets into a communication that *itself* promotes or opposes a religion." Doc. 38 at 21 (quoting *Archdiocese of Wash. v. WMATA,* 281 F. Supp. 3d 88, 108 n.15 (D.D.C. 2017)). As noted, however, *the advertisement itself* presents a satirical portrait of a Mormon missionary, with a doorbell substituted for one of the "O's" in "Mormon." *See* Doc. 20-1 at 39. And just as this Court rejected a commercial/non-commercial distinction as unsupported by WMATA's guidelines, there is nothing to suggest that an advertisement that sells tickets cannot also involve speech that "promotes or opposes" religious belief. *See* Doc. 29 at 14-15 (discussing Arena Stage's "My Body No Choice," a local 2022 performance in which "female playwrights share what [reproductive] choice means to them"); *see also Young Israel,* 89 F.4th at 1349 (asking whether The Book of Mormon ad would be prohibited by transit ad ban). One need only be a casual devotee of the creators of *The Book of Mormon* to know that they have harsh views of the LDS Faith. *See South Park,* "All About Mormons" Episode, https://www.imdb.com/title/tt0705893 (written by Trey Parker and Matthew Stone, the creators of *The Book of Mormon*).

Second, this Court itself was puzzled by WMATA's application of Guideline 12 to the ads submitted for approval by WallBuilders.  Though it made no mention of Guideline 12 in its communications with WallBuilders prior to litigation, WMATA announced for the first time in opposing the preliminary injunction that it had determined that WallBuilders' ads—including the ad depicting George Washington kneeling in prayer, raising the question of whether the founders were "Christian?", and inviting viewers to learn more "about the Faith of the Founders" at WallBuilders' website—did not promote any religion or religious belief.  This Court responded to that argument with incredulity:  "WMATA asserts that 'promoting [a] view of the role of Christianity in American history in support of its belief that Christian faith should have a role in government' is 'quite different from promotion of a religion, religious practice or belief,' but this 'differen[ce]' is not immediately obvious, *particularly without further explanation by WMATA*."  Doc. 38 at 43 (emphasis added; citation omitted).  Much more than simply a reason in support of WallBuilders' standing, as used by this Court, WMATA's acceptance of the ads submitted by WallBuilders under Guideline 12 (which are now running on WMATA ad space) further demonstrates that the Guideline itself is *incapable* of reasoned application.

Finally, WallBuilders includes with this motion additional ads that ran shortly before and after this Court's preliminary injunction decision.  These more recent ads run by Catholic University, as part of its long-running WMATA campaign, conclusively demonstrate WMATA's inconsistent application of Guideline 12.[13]  In opposing WallBuilders' motion for a preliminary

---

[13] This Court concluded that the prior Catholic University ads submitted by WallBuilders "promote[d] the educational opportunities that would accompany enrollment in these schools," Doc. 38 at 19, and that any religious messages in the ads were merely a means of recruiting for the school.  *Id.*  But as with commercial advertisements, an ad for Catholic education can be both an ad designed to recruit prospective students and an ad designed to promote the Catholic faith and belief system.

injunction, WMATA contended that previous Catholic University ads highlighted in prior briefing used Catholic University's motto—which translates from Latin to "God is My Light"—only as an "incidental" part of the overall educational recruitment message.  Doc. 22 at 35.  But the more recent Catholic University ads seriously undermine WMATA's areligious interpretation of Catholic University's campaign.  Indeed, a series of ads currently running at Metro Center explicitly promote Catholic University's belief in God.  First, one ad panel pronounces the religious belief that "GOD IS OUR LIGHT."  SoF ¶ 66.



Another panel similarly features the Latin motto—"Deus Lux Mea Est"—and includes a tagline that plays off of that motto, by inviting potential students to "Lead *with* Light."  *Id.*



A similar bus ad, now running on Metro buses, includes similar phrases, "Shine Forth," "Enlighten the World," and "Lead with Light," alongside the University's logo and Latin motto.



*See id.* ¶ 68.

The message of these ads is not simply to sell educational services, but, quite plainly, to promote a Catholic worldview that "God is our Light" and encouraging viewers to Lead *with God's Light*. Far from an incidental element of an ad selling educational services, the ads explicitly promote belief in God—the motto is the message of the ads, proclaiming "God is our Light." The ads plainly promote religious views, as confirmed by the website mentioned in one of the Catholic University ads—CATHOLIC.EDU/LEAD—which contains powerful religious

imagery of students praying the rosary and testimonials regarding the role of God and faith at Catholic University.  *See* SoF ¶¶ 66-68.  That the message also promotes Catholic University as an educational institution does not wipe away the explicitly religious message of the ads.   That WMATA would run such ads—especially after they have been a focal point of WallBuilders' case here—suggests that it has no idea when and how a potential advertisement "promotes" a religion or religious beliefs or practices.  *See Young Israel*, 89 F.4th at 1348-49.

Taken together, these points—largely taken from this Court's own opinion— strongly support revisiting the Court's prior holding dismissing Count VI.[14]

## III.  WALLBUILDERS HAS DEMONSTRATED A RIGHT TO A PERMANENT INJUNCTION

This Court's preliminary injunction findings also satisfy the four-part test for granting permanent injunctive relief.  *See Amoco Prod. Co v. Village of Gambell*, 480 U.S. 531 546, n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success").  As with a preliminary injunction, a "plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the

---

[14] *Archdiocese* was argued before the D.C. Circuit on March 26, 2018, and *Mansky* was decided several months later in June 14, 2018.  Thus, the *Mansky* argument was never the focal point of the litigation, and was raised only in a brief supplemental authority letter filed by the Archdiocese in the weeks before the D.C. Circuit issued its decision in July 2018.   The record in that case, skeletal as it was on a TRO/PI application, did not focus at all on the inconsistent application of Guideline 12, and the Court's opinion made clear that it was based on that limited record.  *See* 897 F.3d at 330 ("Although a challenged regulation may be unreasonable regardless of the reasons for its adoption, if it is inconsistently enforced . . . , the Archdiocese has not shown that 'WMATA applies its policy in arbitrary or unreasonable ways.'") (cleaned up; citation omitted).

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

This Court's prior analysis addresses the additional injunction factors.   From the Court's determination of a First Amendment violation, "it follows" that "WallBuilders has satisfied the other three factors because the well-settled law in this Circuit is that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  Doc. 38 at 36 (quoting *Singh v. Berger*, 56 F.4th 88, 109 (D.C. Cir. 2022)).  Citing *Archdiocese*, this Court concluded that "'the deprivation of constitutional rights constitutes irreparable injury' when the 'deprivation is shown to be likely;' the suffering of a constitutional violation by WallBuilders outweighs the costs WMATA has identified associated with losing the ability to prohibit issue-oriented advocacy and provide for the safety of its riders; and '[t]he public interest favors the protection of constitutional rights.'"  *Id.* at 37 (quoting *Archdiocese*, 897 F.3d at 334-35).  WallBuilders also has no adequate monetary remedy for the deprivation of its First Amendment rights, especially given WMATA's consistent practice of asserting sovereign immunity from damages claims.  In light of the WallBuilders' actual success on the merits of its First Amendment challenge to Guideline 9, these additional factors fully support permanent injunctive relief against enforcement of Guideline 9.  And the same factors support permanent injunctive relief against Guideline 12.

<u>**CONCLUSION**</u>

For these reasons, this Court should grant summary judgment for WallBuilders on Counts I, II, and VI, declare that Guidelines 9 and 12 are unconstitutional as "unreasonable" under *Mansky*, and permanently enjoin their enforcement against WallBuilders.

As the other counts of the Complaint have been dismissed, the Court can enter final judgment. Because any appeal by either party may affect the scope of post-judgment costs and attorneys' fees, however, WallBuilders further requests that the Court stay any deadline for submission of a bill of costs and petition for attorneys' fees until after exhaustion by both parties of all appeals in this case.

Dated: June 26, 2024

                                           /s/ Shannen W. Coffin

<table>
<tr><td>David J. Hacker (admitted <em>pro hac vice</em>)<br>Jeremiah G. Dys (D.C. Bar # 90000678)<br>Ryan Gardner (admitted <em>pro hac vice</em>)<br>FIRST LIBERTY INSTITUTE<br>2001 West Plano Parkway, Suite 1600<br>Plano, TX 75075<br>Tel: (972) 941-4444<br>dhacker@firstliberty.org<br>jdys@firstliberty.org<br>rgardner@firstliberty.org</td><td>Shannen W. Coffin (D.C. Bar # 449197)<br>Caitlin E. Daday (D.C. Bar # 90002918)<br>STEPTOE LLP<br>1330 Connecticut Ave., N.W.<br>Washington, D.C. 20036<br>Tel: (202) 429-3000<br>Fax: (202) 429-3902<br>scoffin@steptoe.com<br>cdaday@steptoe.com</td></tr>
<tr><td>Camille P. Varone (D.C. Bar # 1617624)<br>FIRST LIBERTY INSTITUTE<br>1331 Pennsylvania Ave. N.W., Suite 1410<br>Washington, D.C. 20004<br>Tel: (202) 921-4105<br>cvarone@firstliberty.org</td><td>Arthur B. Spitzer (D.C. Bar # 235960)<br>Scott Michelman (D.C. Bar # 1006945)<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF THE DISTRICT OF COLUMBIA<br>529 14th Street NW, Suite 722<br>Washington, D.C. 20045<br>Tel: (202) 457-0800<br>aspitzer@acludc.org<br>smichelman@acludc.org</td></tr>
<tr><td>Brian Hauss (D.D.C Bar # NY0581)<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Tel: (212) 549-2500<br>bhauss@aclu.org</td><td>David Cole (D.C. Bar # 438355)<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>915 15th Street NW<br>Washington, D.C. 20005<br>Tel: (212) 549-2611<br>dcole@aclu.org</td></tr>
</table>

*Counsel for WallBuilder Presentations*