IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WALLBUILDER PRESENTATIONS,**<br><br>     Plaintiff,<br><br>     v.<br><br>**RANDY CLARKE, in his official capacity as General Manager and Chief Executive Officer of the Washington Metropolitan Area Transit Authority,**<br><br>     Defendant. | **Case No. 1:23-cv-03695-BAH** |

**PLAINTIFF WALLBUILDER PRESENTATIONS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 56(d) MOTION FOR DISCOVERY**

# INTRODUCTION

Plaintiff WallBuilder Presentations ("WallBuilders") respectfully moves, pursuant to Fed. R. Civ. P. 56(d), for discovery essential to oppose new defenses raised for the first time in Defendant Randy Clarke's Motion for Summary Judgment. In direct response to WallBuilders' successful preliminary challenge to Washington Metropolitan Area Transit Authority's Guidelines Governing Commercial Advertising (the "Guidelines")—along with related challenges by other plaintiffs currently pending in this Court—WMATA has now announced new "Internal Procedures and Interpretive Aids for Reviewing Proposed Commercial Advertising." ECF 48-2, Ex. 1. WMATA's internal procedures and interpretive aids only went into effect on November 1, 2024— the same day WMATA filed its Motion for Summary Judgment and its opposition to WallBuilders' Motion for Summary Judgment.

While far from clear, WMATA apparently intends the interpretive aids to change WMATA's interpretations of the Guidelines at issue in this case. Defendant contends this new guidance document rescues the constitutionality of its challenged Guidelines notwithstanding this Court's preliminary injunction declaring Guideline 9 unconstitutional. Respectfully, these "interpretive aids" do not cure the First Amendment defects in the challenged Guidelines and only provide further evidence of WMATA's approach to their application. The Guidelines remain hopelessly unmoored and unconstitutionally vague as a matter of law. *See Minn. Voters Alliance v. Mansky*, 585 U.S. 1 (2018). Nevertheless, given the centrality of these new "interpretive aids" to Defendant's defense of the Guidelines, a brief period of discovery (WallBuilders proposes 150 days) is essential to permit WallBuilders to probe their development and meaning and to reinforce that the interpretive aids do not render the Guidelines constitutional.

No discovery has occurred to date. While WallBuilders previously believed that no discovery was needed, WMATA's recent actions now fully support the need for inquiry into the interpretive aids and the Guidelines. *See* Fed. R. Civ. P. 56(d). WallBuilders thus seeks to conduct discovery in light of the new interpretive aids, including: (1) written and document discovery related to the development of the interpretive aids; the Guidelines' application in light of the interpretive aids; how the newly interpreted Guidelines serve their stated purposes; any actual experience WMATA may have with the newly interpreted Guidelines; past experience with certain categories of ads that the guidance identifies as prohibited; and (2) deposition discovery— including, without limitation, depositions of the WMATA review panel members responsible for application of the Guidelines and their interpretive aids—regarding these subjects. These facts are currently unavailable to WallBuilders, are generally within WMATA's control, and are readily discoverable.

Discovery is necessary to properly defend against WMATA's motion and to support WallBuilders' own motion. Discovery would assist WallBuilders and the Court in illuminating how this newly issued guidance came about and how it will be applied going forward. WallBuilders proposes 150 days for discovery, which should provide sufficient time for response and also accommodate the approaching holidays. Though the parties engaged in a productive meet and confer, Defendant ultimately indicated that he will oppose this Motion.

## BACKGROUND

This Court is familiar with the background of this case, and WallBuilders merely summarizes it here for the convenience of the Court.

## I. Procedural Background

WallBuilders sued to challenge enforcement of WMATA Commercial Advertising

Guideline 9's issue advertising ban, as well as Guideline 12's ban on religious advertisement, after WMATA denied WallBuilders request to run ads on WMATA Metrobuses asking whether the nation's founders were "Christian?" and linking to its website. ECF No. 41-2 at ¶¶ 21-22. In a May 21, 2024 order, this Court granted a preliminary injunction to prevent WMATA from enforcing against WallBuilders WMATA Guideline 9, concluding that it "does not provide objective, workable standards" to govern its application and is thus not "capable of reasoned" application under *Mansky*. ECF No. 38 at 22-35. With respect to Guideline 12, the Court held that, while WallBuilders had standing to sue, its reasonableness and viewpoint discrimination challenges to Guideline 12 were foreclosed by *Archdiocese of Washington v. WMATA*, 897 F.3d 314 (D.C. Cir. 2018). ECF No. 38 at 44.

Since this Court's preliminary injunction, WMATA has run WallBuilders' two original advertisements on the exterior of its Metrobuses. Those ads have now been running on some buses for more than four months, apparently without any instances of vandalism or violence. WMATA rejected, however, additional ads subsequently submitted by WallBuilders—ads that were previously made part of the record of this case in response to Defendant's standing argument—as violative of its religious advertising ban. *See* ECF No. 44-1 ¶¶ 11-12.

On June 26, 2024, WallBuilders moved for summary judgment on WallBuilders' Guideline 9 claims on the same bases as the Court's May 21 Order. ECF No. 41. WallBuilders also moved for summary judgment on its Guideline 12 claims, requesting that the Court reconsider its earlier dismissal of those challenges. *Id.* WMATA filed its opposition to WallBuilders' motion for summary judgment and its own motion for summary judgment on November 1, 2024. ECF Nos. 48, 49. On the same day, WMATA issued new guidance to govern its interpretation and application of the Guidelines. ECF No. 48-2 & Ex. 1. Relying

3

largely on this guidance, WMATA argues that Guideline 9 now provides an objective, workable standard under *Manksy*. *See* ECF No. 48-1.

## II. WMATA's New Internal Procedures and Interpretive Aids

WMATA's new Internal Procedures and Interpretive Aids document requires the panel to "review past advertisements that have been considered by the Panel to familiarize themselves with how the Guidelines have been applied in the past"—thus suggesting that the new guidance is *not* meant to change prior interpretations. Decl. of Shannen W. Coffin in Support of Pl.'s Rule 56(d) Motion ("Coffin Decl.") at ¶ 4; Doc. 48-2, Ex. 1 at 1; Doc. 49-1, Ex 1 at 1. It further requires the panel members to review any website linked to a proposed advertisement. The panel is instructed to review the page linked to the ad, the website's homepage, any page directly accessible from either of those pages, and any page linked from one of the foregoing pages. Coffin Decl. at ¶ 5; ECF No. 49-1, Ex. 1 at § III.B.

With respect to Guideline 9, the guidance attempts to define an "issue on which there are varying opinions" as "a point, matter, or dispute, the decision of which is of special or public importance." *Id.* at § IV.G.2 (quoting Dictionary.com). Advertisements that include such issues "generally promote a message to the public about substantive ethically, socially, or politically controversial or divisive topics." *Id.* The guidance does not offer any definition of "special or public importance," "substantive," "ethically," "socially" or "politically," or establish any threshold for "controversial" or "divisive." *Id.* It does, however, identify a list of 16 types of ads that WMATA deems to be prohibited under Guideline 9, which it deems "illustrat[ive]." *Id.* These include:

- Ads "[s]upporting, opposing, or promoting a policy or policies of a business or nonprofit entity other than encouraging or promoting the purchase or use of goods or services of the advertiser";

- Ads "[d]escribing or promoting a view of the role that any particular group (including groups characterized by their race, religion, ethnicity, nation origin, sexual orientation, disability status, marital status, age, or ideology) has played or should play in any government, society, or country";

- Ads "[d]escribing or promoting a particular view, interpretation, or meaning of historical events, historical documents (for example, but not limited to, the Declaration of Independence or Constitution), laws, statutes, regulations, or other government policies";

- Ads "[s]upporting, opposing, or promoting a rally, protest, march, demonstration, or other similar event that includes any content that would otherwise be prohibited by the Guidelines";

- Ads "[s]upporting, opposing, or promoting an ethical, social, or humanitarian cause, mission, call to action, awareness campaign, position statement, or other similar effort unless solely for a commercial purpose."

*Id.* at § IV.G.3.j, l-n, p.

However, without providing any particular explanation or grounding in the language of the Guideline, WMATA declares that Guideline 9 does *not* prohibit:

- Ads "for a newspaper, magazine, other publication, TV program, film, theatrical performance, concert, podcast, or other media solely because the medium's content

5

- addresses political issues or contains political messages, so long as the advertisement does not otherwise violate the Guidelines."

- Ads "that encourage or promote the purchase or use of goods or services because others may be opposed to their purchase or use, so long as the advertisement does not otherwise violate the Guidelines."

- Ads "that promote medical services that may be the subject of public debate and controversy (for example, but not limited to, abortion, pregnancy care, gender-affirming medical treatment, in-vitro fertilization, vaccines, etc.) if the advertisement is limited to describing the services available, so long as the advertisement does not otherwise violate the Guidelines."

*Id.* at § IV.G.4, 6-7.

The guidance similarly provides interpretive aids for Guideline 12. Coffin Decl. at ¶ 9. Again without grounding its position in the actual language of the Guideline, WMATA explains that Guideline 12 does not prohibit (1) ads "for a newspaper, magazine, other publication, TV program, film, theatrical performance, concert, podcast, product, or other media solely because the medium's content addresses religion, religious practices, or religious beliefs or contains religious messages," and (2) ads "for an institution solely because of its affiliation with a religion or because it displays a religious, institutional logo, slogan, phrase, symbol, or any other word(s) or image(s)." ECF No. 49-1, Ex. 1 at § IV.H.

The guidance is subject to change without notice at any time by WMATA. ECF No. 49-1, Ex. 1 at 1 (preamble).

# ARGUMENT

## I. STANDARD OF REVIEW

Rule 56(d) of the Federal Rules of Civil Procedure authorizes the court to defer ruling on a motion for summary judgment and allow the nonmovant to take discovery. Fed. R. Civ. P. 56(d). The purpose of Rule 56(d) is to "prevent railroading a non-moving party" through a motion without an opportunity to make full discovery. *Brewer v. HR Policy Ass'n*, 887 F. Supp. 2d 118, 125 (D.D.C. 2012). A Rule 56(d) movant must explain (1) why the discovery is necessary; (2) why it could not produce the facts in opposition to the motion for summary judgment; and (3) that the information is discoverable. *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99-100 (D.C. Cir. 2012). "A Rule 56[(d)] motion requesting time for additional discovery should be granted 'almost as a matter of course[.]'" *Id.* (citation omitted).

## II. WMATA'S INTERPRETIVE GUIDANCE RAISES SIGNIFICANT QUESTIONS ABOUT THE GUIDELINES' APPLICATION.

In the nine years since enactment of the Guidelines, WMATA provided no guidance or internal procedures to govern application of the Guidelines. But the record that WallBuilders had, to date, compiled of publicly available ads run by WMATA plainly demonstrates the Guidelines' haphazard application, which by virtue of their vague and open-ended language are *incapable* of reasoned application, as this Court has already tentatively held. WMATA's sudden introduction of interpretive guidance—and its reliance on the same as the basis for its motion for summary judgment and opposition to WallBuilders' motion—ultimately does not alter that conclusion. It merely shifts the goalposts at halftime.

WMATA sees it differently—contending that the interpretive aids settle any question of constitutionality in its favor. But once again, WMATA's actions raise more questions than they answer. Coffin Decl. at ¶ 14. WMATA now suggests that it has changed its already inconsistent

position on how both Guidelines 9 and 12 apply—a fact that further undermines the certainty of the Guidelines. *Id.* at ¶ 15. WMATA's application of this new guidance in its own summary judgment brief is inconsistent and confusing (*id.* at ¶ 16), thus supporting a brief period of discovery for several reasons.

First, WMATA has shifted its already fatally erratic position on how Guideline 9 should be applied. The Power to the Patients (ECF No. 41-9 at ¶ 2) and World Beyond War (ECF No. 41-3 at ¶ 11) are but examples of this apparent shift. Coffin Decl. at ¶ 18. Throughout this case, WMATA has defended these ads as consistent with Guideline 9. *See, e.g.*, ECF No. 22 at 28-29; ECF No. 23-1 at 16; ECF No. 33 at 8-9. And even now, it claims that these ads are permitted, saying that its decisions on those two ads "were not" a "misapplication of Guideline 9." ECF No. 48-1 at 18. But WMATA simultaneously asserts the ads are now prohibited because the referenced websites directly link to content "[s]upporting, opposing, or promoting a law, ordinance, regulation, or policy or proposed law, ordinance, regulation, or policy." *Id.* at 20. When WMATA itself cannot give a consistent answer *in the same brief* as to the applicability of its Guidelines, how are WallBuilders and other advertisers (and even viewers) supposed to understand their applicability?

This confusion is compounded by the interpretive aids' requirement that the review panel consider "how the Guidelines have been applied in the past," suggesting that its past interpretations remain relevant to its current approach to Guideline 9. ECF No. 48-2, Ex. 1 at § I.C. And the guidance itself is subject to change at any time "without notice." ECF No. 49-1, Ex. 1 at 1 (preamble). This inconsistency and uncertainty inherent in the interpretive aids further underscore the lack of clarity and unbounded nature of the Guideline. Coffin Decl. at ¶ 19. WallBuilders is entitled to discover how WMATA's review panel would apply the new guidance

8

to the ads (real and hypothetical) before the Court and considered by other courts addressing (and often invalidating) transit system issue ad bans, as well as other potential advertisements. *Id.* Such discovery will further illustrate how haphazard WMATA's application of its Guidelines has been and remains even after WMATA's latest interpretive ploy.

Second, as this Court has already concluded, WMATA's application of its new guidance has already proven to be inconsistent and confusing. Coffin Decl. at ¶ 20. Under the same reasoning that apparently led WMATA now to disapprove of previously approved Power to the Patients and World Without Wars ads, Planned Parenthood's bus ad (ECF No. 34-1 at ¶ 4) should also be prohibited because the website on the ad links directly to content expressly promoting highly controversial policies. *See* ECF No. 34-1 at ¶ 8 & Ex. D. Yet WMATA continues to defend the Planned Parenthood ad (along with all of the other ads in the record), arguing that it merely advertises controversial "medical services," which, under its new interpretive guidance, is now exempt from its issue ad ban. ECF No. 48-1 at 15-16, 20. WMATA takes this position even though an ad for medical services is only permissible "so long as [it] does not otherwise violate the Guidelines," which presumably explicit advocacy for a return of *Roe v. Wade* would do. ECF No. 48-2, Ex. A at § IV.G.7. That WMATA still defends this ad (and many of its other previous problematic ads) as permissible suggests that the new guidance does very little work to clarify anything. Coffin Decl. at ¶ 21. WallBuilders should be permitted to test how WMATA intends to apply the new guidance in light of these and other inconsistencies, whether it changes any of WMATA's past interpretations, and how it fits with WMATA's stated objectives of promoting public safety and protecting its property. *Id.* at ¶ 22.

WallBuilders should also be permitted discovery regarding potential viewpoint discrimination as to Guideline 9, which, for instance, the new interpretive guidance suggests

9

allows ads that "*promote* medical services that may be the subject of public debate and controversy," (ECF 48-2 § H.7 (emphasis added)), but does not allow ads that "oppose" those same medical services. Coffin Decl. at ¶ 23. It is paradigmatic viewpoint discrimination for the government to take sides in such an important debate. The new guidance revives viewpoint discrimination concerns here.

Finally, WMATA's new guidance contains prohibitions on categories of ads that are seemingly pointed directly at WallBuilders and its primary mission. *Id.* at ¶ 24. For example, Guideline 9 apparently now prohibits ads that "describ[e] or promot[e] a view of the role that any particular group … has played or should play in any government, society, or country," and ads that "describ[e] or promot[e] a particular view, interpretation, or meaning of historical events, historical documents … laws, statutes, regulations, or other government policies." *Id.* at § IV.G.3.l-m. WMATA has not provided anything to suggest these categories of ads are "controversial" or prone to lead to the type of violence and disorder WMATA fears. Coffin Decl. at ¶ 25. Nor has it pointed to any prior experience with similar "historical" ads that would justify such a reading of Guideline 9. *Id.* WallBuilders should be allowed to delve into the origin and purpose of this interpretive guidance and whether it has any basis in WMATA's prior experience (apart from a late-in-the-game effort to shut down this lawsuit). *Id.*

### III. WALLBUILDERS SHOULD BE PERMITTED DISCOVERY DIRECTED AT WMATA'S NEW INTERPRETIVE GUIDANCE.

In light of the questions raised above and the subsequent impact the interpretive aids will have on this litigation, WallBuilders is entitled to discovery related to the development and application of the interpretive aids. Coffin Decl. at ¶ 26. WallBuilders specifically seeks limited discovery relating to the interpretive aids, as described above (*see supra* at 2). WallBuilders submits that WMATA's newly announced guidance should not change the Court's prior

conclusion on Guideline 9 and opens the door further to reconsideration of Guideline 12. Coffin Decl. at ¶ 26. A limited period of discovery will enable WallBuilders to more fully oppose WMATA's motion for summary judgment and support its own motion in light of the new evidence.

WallBuilders seeks limited written discovery regarding whether WMATA has changed its position as to the scope of the Guidelines, how the new guidance contributes to a showing of the lack of concrete standards WMATA applies to submitted ads, and whether WMATA intends this guidance to target WallBuilders in prohibiting certain types of ads that relate to WallBuilders' mission. Such discovery will help resolve questions about whether the guidance has changed WMATA's positions on Guidelines 9 and 12 or determine if WMATA is simply using the interpretive guidance to stave off this challenge. Coffin Decl. at ¶ 28.

More importantly, written and oral discovery related to the application of the Guidelines in light of the new guidance is critical to this Court's evaluation of WallBuilders' *Mansky* claims. Coffin Decl. at ¶ 29. Because WMATA issued this guidance on the same day that it filed its summary judgment motion, the only evidence WallBuilders is aware of that demonstrates the guidance's application is WMATA's after-the-fact justifications discussed in its briefing. Coffin Decl. at ¶ 30. WallBuilders' position would benefit from additional evidence regarding how WMATA's review panel would apply the guidance in practice. *Id.* Similarly, discovery related to WMATA's past experience with certain categories of ads that it now claims are prohibited under Guideline 9, such as ads promoting views on history and ads promoting the role of particular groups in government (*see* ECF No. 48-2 at Ex. 1 § IV.G.3.l-m.), will help the Court better understand whether and how WMATA's purported safety concerns justify these prohibitions. Coffin Decl. at ¶¶ 31-33.

This evidence is particularly important in light of WMATA's apparent changes in position and its continued inconsistencies in application. Because all of this information is solely within WMATA's possession, WallBuilders needs discovery in order to answer these important questions. Coffin Decl. at ¶ 34. Without this discovery, WallBuilders cannot adequately respond to WMATA's new assertion that the interpretive guidance validates its Advertising Guidelines. *Id.* The Court should grant WallBuilders motion for limited discovery.

## IV. THE COURT SHOULD ALLOW DISCOVERY REGARDING GUIDELINE 12 IN LIGHT OF WMATA'S NEW GUIDANCE

WallBuilders also respectfully requests that Plaintiff's be allowed to take discovery regarding Guideline 12, in light of WMATA's apparent change in legal and factual position in its new guidance. *Id.* at ¶ 35.

In this litigation and other cases, WMATA has consistently argued that Guideline 12 constitutes a ban on *all* religious messaging. Indeed, the D.C. Circuit's holding in *Archdiocese of Washington v. WMATA*, 897 F.3d 314 (D.C. Cir. 2018), was rooted WMATA's representation that Guideline 12 banned all religious content. *See id.* at 319, 324-29. In its preliminary injunction motion here, WallBuilders argued that Guideline 12 was not, in fact, a religious subject-matter ban, but rather a selective ban on certain disfavored religious messages. WMATA strongly contested this argument in opposing the preliminary injunction and seeking dismissal.

But WMATA's new interpretive guidance confirms that Guideline 12 does not actually ban all religious messaging. Coffin Decl. at ¶ 36. By virtue of the interpretive guidance, WMATA now reads Guideline 12 to authorize ads for religiously-themed performances, religious institutions and religious media, but not similar messages by other religious speakers. Under this new guidance, The Catholic University's ads—which explicitly declare "God is Our

Light"—are deemed permissible by WMATA *because* they used a religious message to support a university, i.e., a religious institution. ECF No. 48-1 at 18, 21;ECF No. 48-2, Ex. 1 at § IV.H.

These interpretive exceptions to Guideline 12's ban on religious messaging appear to conflict with its decision on the ad at issue in *Archdiocese*, where WMATA explicitly cited the Archdiocese's proposed ad's religious "imagery" (i.e., the three wise men) to conclude that the ad violated Guideline 12 (and the D.C. Circuit agreed). *See* 897 F.3d at 329. Under the new interpretative guidance, however, that religious imagery (i.e., religious "symbol) would seem to be permissible in an ad for an "institution," such as the Archdiocese of Washington, where related to its mission. *See* ECF No. 48-2, Ex. 1 at § IV.H.2.

The new guidance thus appears to constitute another shift in WMATA's approach to Guideline 12. It raises further issues of vagueness under *Manksy* and underscores the problems of viewpoint discrimination, as Guideline 12, as now interpreted, purports to allow *select* (but not all) religious messages, even those exhorting a belief in God (like Catholic University's "God is Our Light" ad), depending on the speaker and its purpose. *See* ECF No. 9-1 at 36-43.

This shift constitutes a significant change in fact and/or law that would both support WallBuilders' pending request for reconsideration of Guideline 12 and open the door to discovery on Guideline 12's origin and application. *See* ECF No. 41-1 at 29-35; *see also* discussion, *infra*, § IV. While the Court previously dismissed WallBuilders' challenge to Guideline 12, limited discovery to determine whether that claim is now viable in light of WMATA's changed interpretation and practices would be appropriate. If WMATA now interprets Guideline 12 to no longer ban all religious messaging, Guideline 12 would no longer be covered by the D.C. Circuit's holding in *Archdiocese—*and would instead constitute impermissible viewpoint discrimination because it favors some religious speech (and speakers)

13

over other such speech (and speakers).  Because this Court's prior decision on WallBuilders' Guideline 12 claims relied on the holding in that case, WallBuilders' request for reconsideration of these claims would be warranted if discovery shows that WMATA's position has in fact shifted.

## CONCLUSION

For the reasons stated, the Court should grant WallBuilders' Rule 56(d) motion and permit a brief 150-day period of discovery.

November 21, 2024                    Respectfully submitted,


By:    /s/ *Shannen W. Coffin*
       Shannen W. Coffin (D.C. Bar # 449197)
       Andrew J. Sloniewsky (D.C. Bar # 440474)
       Caitlin E. Daday (D.C. Bar # 90002918)
       STEPTOE LLP
       1330 Connecticut Ave., N.W.
       Washington, D.C.  20036
       Tel: (202) 429-3000
       Fax: (202) 429-3902
       scoffin@steptoe.com
       cdaday@steptoe.com

       David J. Hacker (D.C. Bar # 90022028)
       Jeremiah G. Dys (D.C. Bar # 90000678)
       Ryan Gardner (*pro hac vice*)
       FIRST LIBERTY INSTITUTE
       2001 West Plano Parkway, Suite 1600
       Plano, TX 75075
       Tel: (972) 941-4444
       dhacker@firstliberty.org
       jdys@firstliberty.org
       rgardner@firstliberty.org

       Camille P. Varone (D.C. Bar # 1617624)
       FIRST LIBERTY INSTITUTE
       1331 Pennsylvania Ave. N.W., Suite 1410
       Washington, D.C. 20004
       Tel: (202) 921-4105
       cvarone@firstliberty.org

Arthur B. Spitzer (D.C. Bar # 235960)
Scott Michelman (D.C. Bar # 1006945)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF THE DISTRICT OF
  COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: (202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Brian Hauss (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
bhauss@aclu.org

David Cole (D.C. Bar # 438355)
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 662-9000
cole@law.georgetown.edu

*Counsel for Plaintiff WallBuilder Presentations*