**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WALLBUILDER PRESENTATIONS, INC.,**<br>PO Box 397<br>Aledo, TX 76008<br><br>Plaintiff,<br><br>v.<br><br>**RANDY CLARKE, in his official capacity as General Manager and Chief Executive Officer of the Washington Metropolitan Area Transit Authority,**<br>600 Fifth Street, NW<br>Washington, DC 20001,<br><br>Defendant. | **Case No. 1:23-cv-03695-BAH** |

**DECLARATION OF SHANNEN W. COFFIN IN SUPPORT OF
PLAINTIFF'S RULE 56(d) MOTION**

I, Shannen W. Coffin, declare, under penalty of perjury, as follows:

1. I am a Partner at Steptoe LLP and counsel for Plaintiff WallBuilder Presentations ("WallBuilders") in this matter.

2. I make this declaration in support of WallBuilders' Rule 56(d) Motion for Discovery. This declaration is based on my personal knowledge as well as information contained in filings made by Defendants in this matter.

3. On November 1, 2024, WMATA issued new interpretive guidance purporting to explain how its Guidelines Governing Commercial Advertising (the "Guidelines") should be applied and interpreted. ECF No. 48-2 at ¶ 3 & Ex. 1.

4.      WMATA's new Internal Procedures and Interpretive Aids document requires the panel to "review past advertisements that have been considered by the Panel to familiarize themselves with how the Guidelines have been applied in the past."  ECF No. 48-2, Ex. 1 at 1.

5.      It further requires the panel to review any website linked to a proposed advertisement.  The panel is permitted to review the page linked to the ad, the website's homepage, any page accessible from either of those pages, and any page linked to one of the foregoing pages.

6.      The interpretive aid for Guideline 9 defines "an issue on which there are varying opinions" as "a point, matter, or dispute, the decision of which is of special or public importance."  ECF No. 48-2, Ex. 1 at § IV.G.2 (quoting Dictionary.com).  Advertisements that include such issues "generally promote a message to the public about substantive ethically, socially, or politically controversial or divisive topics."  *Id.*  The guidance does not offer any definition of "special or public importance," "substantive," "ethically," "socially" or "politically," or establish any threshold for "controversial" or "divisive."  *Id.*  It does, however, identify a list of 16 types of ads that WMATA deems to be prohibited under Guideline 9, which it deems "illustrat[ive]."  *Id.*

7.      The guidance then lists types of ads that are "prohibited" under Guideline 9. These include:  (1) ads "[s]upporting, opposing, or promoting a policy or policies of a business or nonprofit entity other than encouraging or promoting the purchase or use of goods or services of the advertiser"; (2) ads "[d]escribing or promoting a view of the role that any particular group (including groups characterized by their race, religion, ethnicity, nation origin, sexual orientation, disability status, marital status, age, or ideology) has played or should play in any government, society, or country"; (3) ads "[d]escribing or promoting a particular view,

2

interpretation, or meaning of historical events, historical documents (for example, but not limited to, the Declaration of Independence or Constitution), laws, statutes, regulations, or other government policies"; (4) ads "[s]upporting, opposing, or promoting a rally, protest, march, demonstration, or other similar event that includes any content that would otherwise be prohibited by the Guidelines"; and (5) ads "[s]upporting, opposing, or promoting an ethical, social, or humanitarian cause, mission, call to action, awareness campaign, position statement, or other similar effort unless solely for a commercial purpose." *Id.* at § IV.G.3.j, l-n, p.

8.      However, without providing any particular explanation or grounding in the language of the Guideline, the guidance reveals that Guideline 9 does not prohibit:  (1) ads "for a newspaper, magazine, other publication, TV program, film, theatrical performance, concert, podcast, or other media solely because the medium's content addresses political issues or contains political messages, so long as the advertisement does not otherwise violate the Guidelines," (2) ads "that encourage or promote the purchase or use of goods or services because others may be opposed to their purchase or use, so long as the advertisement does not otherwise violate the Guidelines," or (3) ads "that promote medical services that may be the subject of public debate and controversy (for example, but not limited to, abortion, pregnancy care, gender-affirming medical treatment, in-vitro fertilization, vaccines, etc.) if the advertisement is limited to describing the services available, so long as the advertisement does not otherwise violate the Guidelines." *Id.* at § IV.G.4, 6-7.

9.      The guidance similarly provides interpretive aids for Guideline 12.

10.      Again without grounding its position in the actual language of the Guideline, WMATA explains that Guideline 12 does not prohibit (1) ads "for a newspaper, magazine, other publication, TV program, film, theatrical performance, concert, podcast, product, or other media

3

solely because the medium's content addresses religion, religious practices, or religious beliefs or contains religious messages," and (2) ads "for an institution solely because of its affiliation with a religion or because it displays a religious, institutional logo, slogan, phrase, symbol, or any other word(s) or image(s)." *Id.* at § IV.H.

11.     WMATA relies on this guidance as a basis for filing its motion for summary judgment and for opposing WallBuilders' motion for summary judgment.

12.     To date, there has been no discovery in this action, let alone any discovery related to WMATA's newly-published interpretive guidance.  WallBuilders consequently lacks information needed to respond to WMATA's motion for summary judgment and its opposition to WallBuilders' motion for summary judgment.  It appears that such information is available to WMATA and discoverable.

13.     Given the centrality of the new interpretive aids to WMATA's defense, WallBuilders submits that discovery is needed to assist it and the Court in understanding their origin, basis, and application.

14.     WMATA's reliance on its interpretive guidance as a defense here raises factual questions about how WMATA intends to apply its Guidelines going forward.

15.     WMATA now seems to suggest that it has changed its already inconsistent position on how both Guidelines 9 and 12 apply—a fact that further undermines the certainty of the Guidelines.

16.     Further, WMATA's application of this new guidance in its own summary judgment brief is inconsistent and confusing.

17.     Finally, the guidance includes prohibitions on categories of ads seemingly targeted specifically at WallBuilders for purposes of resolving this litigation.

18.     With respect to its position on Guideline 9, in applying this guidance, WMATA now claims that two ads which were previously permitted—ads for Power to the Patients (ECF No. 41-9 at ¶ 2) and World Beyond War (ECF No. 41-3 at ¶ 11)—are now prohibited because the websites in the ad link to pages containing express advocacy.  ECF No. 48-1 at 20; *but see id* at 18 (asserting that WMATA's prior decisions on these ads "were not" "a misapplication of Guideline 9").

19.     This inconsistency and uncertainty inherent in the interpretive aids further underscore the lack of clarity and unbounded nature of the Guideline.  WallBuilders thus should be allowed to discover how WMATA's review panel would apply the new guidance to the ads (real and hypothetical) before the Court and considered by other courts addressing (and often invalidating) transit system issue ad bans, as well as other potential advertisements.

20.     WMATA's application of the guidance in its briefing has already proved to be inconsistent.  On one hand, it says that the Power to the Patients and World Beyond War ads are prohibited because of the content of their websites.  ECF No. 48-1 at 20.  On the other hand, it also says that Planned Parenthood's ad is allowed because it promotes medical services, even though the website on the ad directly links to pages containing express advocacy.  *Id.* at 15-16, 20.

21.     That WMATA still defends this ad as permissible (and many of its other previous problematic ads) suggests that the new guidance does very little work to clarify anything.

22.     In light of these inconsistencies, WallBuilders should be permitted to test how WMATA intends to apply the new guidance, whether it, in fact, changes any of its past interpretations, and how it fits with WMATA's stated objectives of, among others, promoting public safety and protecting its property.

23.     WallBuilder should also be permitted to take discovery regarding potential viewpoint discrimination as to Guideline 9, which permits ads that "promote medical services that may be the subject of public debate and controversy," (ECF No. 48-2, Ex. 1 at § IV.H.7), but does not allow ads that oppose those same medical services.

24.     WMATA's new interpretive guidance also identifies a number of categories of "issue ads" that it considers to be prohibited under Guideline 9.  These include: (1) ads "[d]escribing or promoting a view of the role that any particular group (including groups characterized by their race, religion, ethnicity, nation origin, sexual orientation, disability status, marital status, age, or ideology) has played or should play in any government, society, or country," (2) ads "[d]escribing or promoting a particular view, interpretation, or meaning of historical events, historical documents (for example, but not limited to, the Declaration of Independence or Constitution), laws, statutes, regulations, or other government policies," and (3) ads "[s]upporting, opposing, or promoting an ethical, social, or humanitarian cause, mission, call to action, awareness campaign, position statement, or other similar effort unless solely for a commercial purpose."  ECF No. 48-2, Ex. 1 at § IV.G.3.l-m, p.  These categories seem to be targeted at WallBuilders' ads and its mission.

25.     WMATA has not provided any evidence that these categories of ads are "controversial" ads that are prone to lead to the type of violence and disorder WMATA fears. Nor has it pointed to any prior experience with similar "historical" ads that would justify such a reading of Guideline 9.  WallBuilders should be allowed to delve into the origin and purpose of this interpretive guidance and whether it has any basis in WMATA's prior experience (apart from a late-in-the-game effort to shut down this lawsuit).

6

26.     In light of these questions and the subsequent impact the interpretive aids will have on this litigation, WallBuilders is entitled to discovery related to the development and application of the interpretive aids.  WallBuilders specifically seeks the limited discovery relating to the interpretive aids, including, in particular:  (1) written and document discovery related to the origins of the interpretive aids, the application of the interpretive aids and their impact on application of the Guidelines, how the Guidelines, as interpreted by WMATA, serve its stated purposes, and WMATA's actual experience with the Guidelines in light of the interpretive aids (recognizing, of course, that experience is limited) and past experience with certain categories of ads that the guidance identifies as prohibited; and (2) deposition discovery, including of the WMATA review panel members responsible for application of the Guidelines and their interpretive aids, regarding the same subjects.  WallBuilders submits that this guidance should not change the Court's prior conclusion on Guideline 9 and should open the door to reconsideration of Guideline 12.

27.     WallBuilders believes 150 days is a reasonable period to complete this discovery.

28.     WMATA seeks limited written discovery regarding whether WMATA has changed its position as to the scope of the Guidelines, how the new guidance contributes to a showing of the lack of concrete standards WMATA applies to submitted ads, and whether WMATA intends this guidance to target WallBuilders in prohibiting certain types of ads that relate to WallBuilders' mission.  This information will help address whether WMATA has changed its positions on the scope of these Guidelines or is simply using the interpretive guidance to stave off this challenge.

29.     Written and oral discovery related to WMATA's application of the interpretive guidance will allow WallBuilders to understand how WMATA will apply the new guidance in practice and is critical to this Court's evaluation of WallBuilders' *Mansky* claims.

30.     At this point, the only evidence related to the application of the guidance is WMATA's after-the-fact justifications of prior ads in its briefing.  To support its claims and oppose WMATA's motion, WallBuilders needs additional evidence regarding how the guidance will impact WMATA's decisions in practice.

31.     WallBuilders seeks limited discovery into WMATA's past experience with certain categories of ads now prohibited under Guideline 9, such as those promoting views on history or the role of particular groups in government.

32.     This information will help WallBuilders determine whether WMATA has previously rejected similar types of ads or whether similar ads that were run were met with violence or disorder.

33.     WallBuilders believes that this information will reveal whether WMATA's past experiences support its safety justification for prohibiting certain types of advertisements.  It will also help WallBuilders determine whether WMATA's new prohibitions are targeted at its ads.

34.     Because all of this information is solely within WMATA's possession, WallBuilders needs discovery to address these issues.  Without this discovery, WallBuilders cannot adequately respond to WMATA's motion for summary judgment.

35.     Finally, WallBuilders respectfully asks this Court to permit it to take discovery regarding Guideline 12 in light of WMATA's apparent change in legal and factual position taken in its new guidance.

36.     WMATA's guidance suggests that Guideline 12 no longer constitutes a ban on all religious advertising.  If that is true, it no longer falls under the D.C. Circuit's holding in *Archdiocese of Washington v. WMATA*, 897 F.3d 314 (D.C. Cir. 2018), which this Court relied on in dismissing WallBuilders' Guideline 12 claims.

37.     This shift constitutes a significant change in fact and/or law that would both support WallBuilders' pending request for reconsideration of its Guideline 12 claims and open the door to discovery on that Guideline's origin and application.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on this 21st day of November, 2024.


By:   /s/ Shannen W. Coffin
                Shannen W. Coffin

9