**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WALLBUILDER PRESENTATIONS,**<br><br>      Plaintiff,<br><br>  v.<br><br>**RANDY CLARKE, in his official capacity as General Manager and Chief Executive Officer of the Washington Metropolitan Area Transit Authority,**<br><br>      Defendant. | **Case No. 1:23-cv-03695-BAH** |

**PLAINTIFF WALLBUILDER PRESENTATIONS' REPLY IN SUPPORT OF ITS
RULE 56(d) MOTION FOR DISCOVERY**

## **INTRODUCTION**

Plaintiff WallBuilder Presentations ("WallBuilders") has moved for discovery under Federal Rule of Civil Procedure 56(d) to oppose new defenses raised for the first time in Defendant Randy Clarke's ("WMATA") Motion for Summary Judgment. WallBuilders proposes 150 days for written and deposition discovery—for the convenience of the parties and in light of the holidays, WallBuilders now requests that the discovery period open on January 6, 2025, the first Monday in the New Year, and end of June 5, 2025.[1]

WMATA has announced new "Internal Procedures and Interpretive Aids for Reviewing Proposed Commercial Advertising," ECF 48-2, Ex. 1, which WMATA relies on as a defense, contending the new guidance document rescues the constitutionality of its challenged Guidelines notwithstanding this Court's preliminary injunction, which declared Guideline 9 unconstitutional. WallBuilders has been asking for clarification on how Guidelines 9 and 12 apply for a year and a half since its letter of June 28, 2023 and until now, WMATA has not responded. Compl. ¶¶ 43–44. These Interpretive Aids are new, introduce fresh questions and confusion about their application in conjunction with the challenged Guidelines, and are the proper subject of limited discovery to ensure that this case receives fair, informed, and full resolution.

Notably, WMATA does not oppose discovery under Rule 56(d) as a general matter. *See* Pls.' Opp. at 4 (ECF 53) ("Defendant does not oppose discovery of non-privileged, discoverable information about WMATA's decisions on ads under Guideline 9 as interpreted using the Interpretive Aids. Nor does Defendant oppose discovery of non-privileged information about the relationship between the Interpretive Aids and their purpose vis-à-vis Guideline 9."). Thus, there

---

[1] On the day of this filing, counsel for WallBuilders informed Defendant's counsel (by email) that WallBuilders would ask in its reply to defer the start of the discovery period until early January 2025.

is little question that WallBuilders' motion should be granted.  But while agreeing to the necessity of discovery, WMATA takes the unusual step of preemptively asserting blanket privilege, effectively asserting immunity from a wide range of discovery, rather than asserting privilege in the ordinary course of litigation.  There is no basis for this approach, which constitutes both an improper preemptive strike on the discovery sought by WallBuilders and a departure from the Federal Rules of Civil Procedure.

WMATA seems to want both this Court's praise for providing new Interpretive Aids and its permission to preclude any meaningful discovery into their background and application. WMATA attempts to invoke the new guidance to end this Court's inquiry while trying to prevent good faith, relevant discovery about the application of the new guidance to Plaintiff's claims.  In raising its arguments, WMATA seeks to preclude the very types of questions that *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018) and the many cases applying that decision to transit system advertising regulations have considered.   It cannot do so.

This Court should reject these arguments and allow WallBuilders the opportunity to take relevant discovery and in the interim should defer its decision on the parties' pending motions for summary judgment.

## ARGUMENT

**I.    STANDARD OF REVIEW**

Rule 56(d) of the Federal Rules of Civil Procedure authorizes the court to defer ruling on a motion for summary judgment and allow the nonmovant to take discovery. Fed. R. Civ. P. 56(d). The purpose of Rule 56(d) is to "prevent railroading a non-moving party" through a motion without an opportunity to take relevant discovery.  *Brewer v. HR Policy Ass'n*, 887 F. Supp. 2d 118, 125 (D.D.C. 2012).  In seeking Rule 56(d) relief, the movant must explain (1) why the discovery is necessary; (2) why it could not produce the facts in opposition to the motion for summary

2

judgment; and (3) that the information is discoverable. *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99-100 (D.C. Cir. 2012). "A Rule 56[(d)] motion requesting time for additional discovery should be granted 'almost as a matter of course[.]'" *Id.* at 99 (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)). WMATA does not contest that, as a general matter, this standard is satisfied in this case as a result of its late-in-the-day introduction of its Interpretive Aids, which it claims should end the dispute.

## II.   WMATA SHOULD NOT HAVE BLANKET IMMUNITY FROM RELEVANT DISCOVERY.

WallBuilders is seeking discovery regarding highly relevant matter that is essential to this Court's evaluation of its claims. In the ordinary course of litigation, both parties would disclose and produce the relevant, nonprivileged materials for the other party's review, including information "within this scope of discovery" that "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26(b)(5)(A) provides that a party receiving a written discovery request may withhold privileged materials by expressly making privilege claims and "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Rather than either oppose this Rule 56(d) motion in substance or raise privilege objections during the regular course of discovery, WMATA has proposed the highly irregular approach of invoking blanket immunity to discovery for materials it unilaterally deems privileged and speculative, without even seeing what WallBuilders intends to ask for and without allowing for evaluation of those claims either by Plaintiff or this Court. The Court should not sanction this irregular approach.

3

### A. WMATA Cannot Invoke a Blanket Privilege Against Discovery.

WMATA first tries to prevent discovery of all documents and the taking of any depositions regarding its new Interpretive Aids by asserting deliberative process privilege, attorney-client privilege, and attorney work product privilege. ECF 53 at 4–5. In raising these objections on the front end, as a blanket bar to engaging in discovery, rather than in the normal course of discovery, WMATA proposes that WallBuilders not be allowed to ask a very wide range of highly relevant questions. Of course, it is possible that during discovery, WMATA may properly invoke privilege over certain otherwise relevant documents or testimony. But, unlike a front-end blanket privilege, engaging in the ordinary course of discovery would result in a privilege log, in which WMATA would need to provide at least enough information for this Court to assess whether the privilege assertions are proper. *See* Fed. R. Civ. P. 26(b)(5)(A). And even individual documents could be redacted in part, rather than withheld in full. WallBuilders does not deny that these privileges may apply to some of WMATA's documents. But WMATA cannot singlehandedly prevent discovery and preclude WallBuilders from asking questions and getting whatever responsive documents or redacted documents are within the scope of discovery and permissible. Likewise, WMATA cannot properly shield its employees from being deposed at all simply because it may object to some questions as seeking information protected by some privilege.

In cases involving the invocation of deliberative process privilege by government agencies, the agency generally is required to disclose a record of what documents the agency relied on, even if it ultimately properly invokes privilege. As a general rule, the deliberative process privilege does not "protect material that is purely factual." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). By making a blanket objection before discovery has even begun, WMATA is effectively asserting that each and every document related to the Interpretive Aids is bereft of factual material that could be disclosed, but instead only contains opinions. *See Mapother v. Department of Justice*,

4

3 F.3d 1533, 1537 (D.D.C. 1993). Moreover, even "[w]here an agency claims that disclosing factual material will reveal its deliberative processes," a court "must examine the information requested in light of the policies and goals that underlie the deliberative process privilege." *Id.* at 1537–38. Nothing in the case law supports WMATA's novel approach of simply foreclosing discovery by invoking the privilege as a blanket ban up front.

WMATA's blanket, preemptive assertions of attorney-client privilege and work-product privilege are both premature and overbroad for the same reasons. WMATA has provided no basis on which the Court could conclude that all of Plaintiff's questions about the genesis and operation of the new Interpretive Aids would be objectionable on those grounds. And work product privilege, at least, can be overcome by a showing of need. Whether it would be here is a fact-specific inquiry, depending, in part, on the nature of the discovery sought and the availability of other sources of the information. The point here is not to litigate those issues now, in a factual vacuum. Instead, litigation on those matters should proceed as normal—including the good faith meet-and-confer process between the parties, which might obviate the need for litigation entirely.

The Court should therefore reject WMATA's preemptive assertion of privilege to prevent discovery. WallBuilders should be entitled to engage in discovery and respond to WMATA's objections and privilege assertions in the ordinary course.

### B. WMATA Has No Basis to Prevent Discovery About Guideline 9's Application—A Matter at the Very Heart of WallBuilders' Claims.

Likewise, WMATA should not receive a protective order against questions that WallBuilders has not even asked. WMATA argues that all discovery about how WMATA would apply the new Interpretative Aids to hypothetical ads or past ads calls for impermissible speculation, and thus that the Court should not allow discovery into those topics at all. ECF 53 at 5–6. But WMATA is wrong, and its proposed approach is especially improper in the context of

5

this case. Unlike the cases that WMATA cites, which do not pertain to any analysis of speech codes or regulations, *Mansky* and its progeny all consider how decisionmakers would apply the relevant guidelines to both hypothetical and real advertisements. Indeed, such discovery is essential to explain how the Guidelines will operate and for WMATA to "articulate some sensible basis for distinguishing what may come in from what must stay out." *Mansky*, 585 U.S. at 16.

In *Mansky*, the State pointed to its Election Policy, which it held out "as authoritative guidance regarding implementation," just as WMATA has done with the Guidelines and new Interpretive Aids here. *Id.* at 18. One of the State's policies, like Guideline 9, "raise[d] more questions than it answer[ed]" because it necessarily raised questions regarding the definition of the term "issue." *Id.* The "issue" ban would have required election judges to "maintain a mental index of the platforms and positions of every candidate and party on the ballot," and the Supreme Court walked through a series of hypothetical examples that might be banned under the policy. *Id.* at 19. The Court asked if a "Support Our Troops" shirt would be banned, or a "# MeToo" shirt, if a candidate had expressed a view on related issues. *Id.* At oral argument, when the Court asked about those hypotheticals, the State explained "that the ban would cover such an item if a candidate had brought up the topic." *Id.* (simplified). Likewise, the Court considered hypotheticals about whether another State policy would ban insignia or logos from groups with "stated positions on matters of public concern," like the ACLU, Ben & Jerry's, the World Wildlife Fund, the AARP, and the Boy Scouts of America. *Id.* at 20. And yet again, the Court considered and asked hypotheticals about how the State's policies would apply to t-shirt designs declaring "All Lives Matter," bearing the name of the National Rifle Association or the text of the Second Amendment, or showing a rainbow flag. *Id.* at 21. Over and over, the Court not only accepted evidence about

6

the application of the policies to these hypotheticals, but the Court was the one advancing these hypothetical questions in order to resolve the claim before it.

And the same is true of cases applying *Mansky*, which frequently ask how a particular ban would apply in hypothetical circumstances. *See, e.g.*, *Zukerman v. U.S. Postal Service*, 961 F.3d 431, 450 (D.C. Cir. 2020) ("For instance, counsel for the Government struggled at oral argument to explain whether stamps depicting seemingly 'commercial' ad campaigns (e.g., a Nike campaign featuring Colin Kaepernick, or a Fox News campaign featuring Tucker Carlson Tonight, or a Ben & Jerry's campaign promoting 'Pecan Resist') would be eligible under the 2018 Rule."). As another court reviewing similar discovery objections to questions about how a transit authority would handle hypothetical ads under its advertising policy concluded, "[t]he probative value of [the transit agency's communications manager's] responses to the hypothetical advertisements is apparent . . . . Such hypotheticals aid the process by illustrating how [the transit agency] classifies an advertisement, and why certain advertisements with similar content may be treated differently." *White Coat Waste Project v. Greater Richmond Transit Auth.*, 463 F. Supp. 3d 661, 680 n.16 (E.D. Va. 2020), *aff'd in relevant part*, 35 F.4th 179 (4th Cir. 2022); *see also Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 316 (3d Cir. 2020) ("In addition, when asked during oral argument whether SEPTA would determine a series of hypothetical advertisements to be in violation of the current Advertising Standards, SEPTA's counsel's answers further highlighted the arbitrariness of the decision-making process."); *Am. Freedom Def. Initiative v. Suburban Mobility Authority for Reg'l Transp.*, 978 F.3d 481, 496-97 (6th Cir. 2020) (relying on counsel's answers to hypotheticals posed at oral argument to demonstrate the arbitrariness of the transportation authority's advertising guidelines).

WallBuilders should have no less ability to ask about relevant hypothetical enforcement applications. Indeed, given the brand-new nature of the Interpretative Aids, without an opportunity to ask about hypothetical ads or past ads that were not considered under the Interpretative Aids, WallBuilders would not have a meaningful opportunity to conduct discovery into the application of the Guidelines as interpreted by these new Aids. Allowing such discovery is not only proper but is necessary to fairly assess both parties' arguments in this matter.

### C. This Court Should Not Artificially Limit Who Should be Subject to Deposition Examination

WMATA contends that WallBuilders should not be allowed to depose individual members of its advertising review panel, arguing that such discovery would not shed light on the facts of the case. ECF 53 at 6. This argument is absurd on its face. No other decisionmakers who apply the Guidelines and Interpretive Aids exist, and to foreclose this avenue of discovery is to make discovery *de facto* unavailable about the Guidelines' application. More importantly, to the extent that individual review panel members have divergent views on how to interpret the Guidelines, such evidence would be highly probative of WallBuilders' claim that Guidelines 9 and 12 are unreasonable under *Mansky*. In *Mansky*, the Supreme Court considered that the application of the individual policies may vary "in significant part on the background knowledge and media consumption of the particular [decisionmaker] applying it." 585 U.S. at 20-21. That application might be erratic based on *who* the decisionmaker is illustrated the policies' unreasonable nature. That the review panel members make their determinations jointly does not diminish the relevance of each member's understanding of the new guidance. Such evidence, if present here, is relevant, probative, and discoverable.

8

## III.   THE COURT SHOULD ALLOW DISCOVERY REGARDING GUIDELINE 12.

WallBuilders has requested that it be allowed to take discovery under these same principles regarding Guideline 12, along with its motion to revisit this Court's holding on Guideline 12. *See generally* ECF 52; ECF 41-1 at 29–35.  That prior ruling was grounded in the D.C. Circuit's holding in *Archdiocese of Washington v. WMATA*, 897 F.3d 314 (D.C. Cir. 2018), which relied heavily on WMATA's representation that Guideline 12 banned all religious content.  *See id.* at 319, 324-29.  Throughout the course of this lawsuit, WallBuilders has argued that Guideline 12 was not, in fact, a religious subject-matter ban, but rather a selective ban on certain disfavored religious messages.  The introduction of WMATA's Interpretative Aids appears to support WallBuilders' argument, and it provides the strongest basis both for reconsidering whether Guideline 12 can survive *Mansky* reasonableness analysis and allowing discovery.

WMATA insists that its Interpretative Aids do not allow religious messaging.  ECF 53 at 7.  But it ignores the plain text of its own Interpretative Aids.  The Interpretative Aids specify that Guideline 12 does not prohibit (1) ads "for a newspaper, magazine, other publication, TV program, film, theatrical performance, concert, podcast, product, or other media solely because the medium's content addresses religion, religious practices, or religious beliefs or contains religious messages," and (2) ads "for an institution solely because of its affiliation with a religion or because it displays a religious, institutional logo, slogan, phrase, symbol, or any other word(s) or image(s)." ECF 49-1, Ex. 1 at § IV.H.  The Interpretative Aids thus explicitly identify numerous examples of ads that contain religious messaging but are now permissible under Guideline 12.  How else could WMATA continue to defend Catholic University's ad declaring "God is our Light" but by concluding that certain religious messages by certain speakers are permitted on WMATA buses?

If Guideline 12 no longer bans all religious messaging, as the text of these Interpretative Aids suggests, then Guideline 12 no longer has the imprimatur of the holding in *Archdiocese*.

9

Instead, Guideline 12 would constitute impermissible viewpoint discrimination because it favors some religious speech (and speakers) over other such speech (and speakers). This shift constitutes a significant change in fact and law that supports WallBuilders' pending request for reconsideration of Guideline 12 and should open the door to discovery on Guideline 12's origin and application. *See* ECF 41-1 at 29-35. Discovery is particularly necessary here to evaluate WallBuilders' request for reconsideration of these claims and determine whether that claim is now viable in light of WMATA's changed interpretation and practices.

## CONCLUSION

For the reasons stated, the Court should grant WallBuilders' Rule 56(d) motion and grant WallBuilders' motion for discovery. In light of Plaintiff's request for a slight delay in the start period of discovery, to accommodate the holidays, a revised proposed order is attached.

December 12, 2024                     Respectfully submitted,

By:     /s/ Shannen W. Coffin
        Shannen W. Coffin (D.C. Bar # 449197)
        Andrew J. Sloniewsky (D.C. Bar # 440474)
        Caitlin E. Daday (D.C. Bar # 90002918)
        STEPTOE LLP
        1330 Connecticut Ave., N.W.
        Washington, D.C.  20036
        Tel: (202) 429-3000
        Fax: (202) 429-3902
        scoffin@steptoe.com
        asloniewsky@steptoe.com
        cdaday@steptoe.com

        David J. Hacker (D.C. Bar # 90022028)
        Jeremiah G. Dys (D.C. Bar # 90000678)
        Ryan Gardner (*pro hac vice*)
        FIRST LIBERTY INSTITUTE
        2001 West Plano Parkway, Suite 1600
        Plano, TX 75075
        Tel: (972) 941-4444
        dhacker@firstliberty.org

10

    jdys@firstliberty.org
    rgardner@firstliberty.org

    Camille P. Varone (D.C. Bar # 1617624)
    FIRST LIBERTY INSTITUTE
    1331 Pennsylvania Ave. N.W., Suite 1410
    Washington, D.C. 20004
    Tel: (202) 921-4105
    cvarone@firstliberty.org

    Arthur B. Spitzer (D.C. Bar # 235960)
    Scott Michelman (D.C. Bar # 1006945)
    AMERICAN CIVIL LIBERTIES UNION
      FOUNDATION OF THE DISTRICT OF
      COLUMBIA
    529 14th Street NW, Suite 722
    Washington, D.C. 20045
    Tel: (202) 457-0800
    aspitzer@acludc.org
    smichelman@acludc.org

    Brian Hauss (*pro hac vice*)
    AMERICAN CIVIL LIBERTIES UNION
      FOUNDATION
    125 Broad Street, 18th Floor
    New York, NY 10004
    Tel: (212) 549-2500
    bhauss@aclu.org

    David Cole (D.C. Bar # 438355)
    600 New Jersey Avenue, N.W.
    Washington, D.C. 20001
    Tel: (202) 662-9000
    cole@law.georgetown.edu


    *Counsel for Plaintiff WallBuilder Presentations*