| | |
|---|---|
| **From:** | Wolverton, Caroline |
| **To:** | Howell Chambers |
| **Cc:** | Coffin, Shannen; Sloniewsky, Andrew; Ames, Caitlin; Pierce, Anthony; Meraz, Vanessa; Rex Heinke |
| **Subject:** | Wallbuilder Presentations v. Clarke, No. 23-cv-3695-BAH |
| **Date:** | Tuesday, October 7, 2025 5:41:17 PM |

**CAUTION - EXTERNAL:**

Your honor,

In accordance with Rule 9 of this Court's Standing Order, the parties to the above-referenced action respectfully request a telephone conference with the Court regarding a discovery dispute. The dispute concerns whether the Washington Metropolitan Transit Authority ("WMATA") must provide Fed. R. Civ. P. 30(b)(6) testimony about how its three-person Advertising Review Panel would decide hypothetical advertising submissions. The parties have met and conferred in good faith attempting to resolve this issue informally but have not succeeded.

Plaintiff's Rule 30(b)(6) Notice of Deposition seeks testimony about the "interpretation and application" of WMATA's Commercial Advertising Guidelines ("Guidelines"), to include how the review panel would apply the Guidelines to ads that have not come before it.

**Defendant's position**

Rule 30(b)(6) provides for testimony regarding "information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). While WMATA can provide nonprivileged testimony about ads that came before its Advertisement Review Panel, it does not know and cannot reasonably predict how the three-person panel would apply the Guidelines to hypothetical ads it has not considered. This is because to reach a decision on whether an advertisement violates the Guidelines, the three-person panel collectively discusses the ad, may consider relevant past advertisements, may conduct and consider research regarding the ad, and may review and consider a website and/or QR code shown in the ad. WMATA cannot reasonably recreate that deliberative process through a Rule 30(b)(6) deposition. Metro Internal Procedures and Interpretive Aids for Reviewing Proposed Commercial Advertising § III ("Interpretive Aids") (ECF No. 49-1, Nov. 1, 2024).

Plaintiff seeks testimony about particular ads that will answer the question "Would this ad be permissible under Guideline 9?" WMATA cannot reasonably provide that testimony because the transit authority reaches decisions on whether ads comport with Guideline 9 through the deliberative process of its three-person Advertisement Review Panel. Without replicating that process, WMATA cannot answer the question of whether WMATA would deem a given ad permissible.

Replicating the panel's deliberative process to provide 30(b)(6) testimony would not be reasonable. WMATA's Director of Marketing Georgetta Nicol testified at her deposition that the amount of time the panel spends on an ad can range from a few minutes to an hour. Plaintiff's suggestion of WMATA's designated witness consulting with the panel before the deposition would not be an adequate substitute because, without knowing what ad is asked about, the panel would not be able to apply its above-described process to reach a decision.

Ms. Nicol also explained that, as a panel member, she could not opine on hypothetical ads because her view of an ad is informed by the panel's deliberative process. It was not a 30(b)(6) deposition, and Plaintiff's suggestion that Ms. Nicol should have been prepared to explain WMATA's decisions on particular ads that had come before the panel is unsupported. As previously stated, Defendant has not objected to providing nonprivileged 30(b)(6) testimony to explain decisions reached by the panel since the Interpretive Aids have been in effect.

The post-*Mansky* cases involving discussion of hypothetical ads that Plaintiff cites are readily distinguishable. *Zukerman v. USPS* involved a government attorney's statements during oral argument about hypothetical ads. 961 F.3d 431, 450 (D.C. Cir. 2020). *AFDI v. Suburban Mobility Authority* also involved counsel's oral argument regarding hypothetical ads. 978 F.3d 481, 496 (6th Cir. 2020). The other cases all involved testimony from single decisionmakers whereas WMATA utilizes a three-person panel to reach decisions. *See White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 200 (4th Cir. 2022); *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1341 (11th Cir. 2024).

Lastly, contrary to Plaintiff's suggestion that it needs testimony about how WMATA would decide hypothetical ads to pursue its claims, evidence of WMATA's actual application of Guideline 9 as informed by the Interpretive Aids is sufficient to show that the guideline is capable of reasoned application. Again, Defendant has not objected to such testimony. And insofar as the Court would find discussion of hypotheticals useful, counsel for Defendant will be prepared to answer questions from the Court at oral argument like the D.C. Circuit asked in *Zukerman* and the Sixth Circuit asked in *AFDI*.

**Plaintiff's position**

Since the adoption of Guideline 9 (WMATA's issue ad ban) in 2015, WMATA's interpretation and application of the Guideline has been hopelessly inconsistent. WMATA's publication of "Interpretive Aids" in November 2024 did nothing to clarify the meaning and scope of Guideline 9; indeed, the Interpretive Aids raise more questions than they resolve. Since their publication, WMATA continues to run ads that, both on their face and in incorporated websites, address issues on which public opinion is divided.

WallBuilders has sought to take only two depositions in this case. First, on August 13, 2025, Plaintiff deposed Georgetta Nicol, WMATA's marketing director and a longtime permanent or alternate member of WMATA's advertising review panel. When asked whether certain ads, both real and hypothetical, were covered by WMATA's issue ad ban, Ms. Nicol was repeatedly unable to provide her view—stating that she could not make a determination without first conferring with her other panel members. Even when Plaintiff asked what her own personal understanding regarding the application of Guideline 9 to a particular advertisement would be, Ms. Nicol was unable to apply the Guideline to the advertisement at issue.

Following that deposition, WallBuilders noticed a 30(b)(6) deposition to similarly question a designated WMATA representative on the meaning and application of Guideline 9. WallBuilders seeks testimony from WMATA largely on the same topics covered in the Nicol Georgetta deposition, although there may be additional questions based on advertisements that have run in the interim. WMATA is thus familiar with most of the questions and advertisements (real and hypothetical) at issue.

In particular, WallBuilders seeks testimony regarding the application of Guideline 9 to dozens of ads that were actually run by WMATA on its buses/trains and at its stations and certain ads that were rejected by the panel.  In many cases, Plaintiff will provide relevant website content where incorporated into the ads.  Plaintiff also seeks to ask about the interpretation and application of WMATA's Guideline 9 and its Interpretive Aids to a number of hypothetical advertisement like those that have been discussed by courts in similar cases and in the prior pleadings by the parties—*e.g.*, how WMATA's Guideline 9 would apply to ads for Ben & Jerry's "Resist,"  a Nike ad featuring a "Black Lives Matter" slogan, an Arena Stage ad for a pro-abortion play "My Body, No Choice," and similar hypotheticals intended to test where Guideline 9's ban begins and ends.

Especially in light of that background, WMATA's objections are not well founded.  The principal question in this case is whether WMATA's indeterminate Guideline 9 is capable of reasoned application.  *See Minnesota Voters Alliance v. Manksy,* 585 U.S. 1 (2018). Plaintiff is entitled to ask why WMATA a particular ad that addresses "issues"—to use actual examples, like an ad asking Congress not to change the Medicaid statute or telling riders to "Read Queer All Year"—is consistent with Guideline 9.  Similarly, questions regarding hypothetical ads are designed to test WMATA's own understanding of the ambiguities in Guideline 9 and its Interpretive Aids.  The D.C. Circuit and other courts applying *Mansky* frequently resort to such hypotheticals to test the limits of a particular advertising regulation.  *See, e.g., Zukerman v. U.S. Postal Serv.,* 961 F. 3d 431, 450 (D.C. Cir. 2020) (discussing Ben & Jerry's "Pecan Resist" example); *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 496 (6th Cir. 2020) ("Any number of hypotheticals could further demonstrate the risk of subjective enforcement[,]" including, *e.g.,* a "Black Lives Matter" ad); *White Coat Waste Proj. v. Greater Richmond Transit Co*., 35 F. 4th 179, 200 (4th Cir. 2022) (considering McDonalds versus animal rights group hypothetical in analyzing indeterminate application of political ad ban); *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Trans. Auth*., 89 F.4th 1337, 1350 & n.5 (11th Cir. 2024) ("imagin[ing]" hypothetical ad that would not violate ad ban).

WMATA takes the position that the only way it can answer those questions is by convening its advertising review panel.  But it also has objected on the grounds that the advertisement review panel cannot offer advisory opinions.  It did so in a Sept. 18, 2025 Letter from Caroline Wolverton to Arthur Spitzer in *ACLU v. Clarke,* regarding what is an agreed joint 30(b)(6) deposition with *WallBuilder Presentations v. WMATA*.  Thus, in its view, even the advertising review panel could not answer such questions.  But putting that baseless objection aside, WallBuilders has not asked WMATA how *its review panel* would formally decide anything.  Plaintiff's questions merely seek WMATA's view on the meaning and application of its own Guidelines to certain real and hypothetical ads.  Its questions are of the nature of "Would this ad be permissible under Guideline 9?"  Those questions do not call for predictions of what the review panel would decide; they ask what Guideline 9 means, as illustrated by the ads in question.

To further illustrate, several recent questionable ads run by WMATA were apparently not approved by the review panel, but rather, were reviewed and approved only by WMATA's advertising contractor, Outfront Media.  Plaintiff is entitled to discover whether WMATA agrees with the advertising contractor's decision to run an ad that addresses, either on its face or in incorporated materials, issues of public debate.  Those questions are not based on hypotheticals.  They do not require the panel to meet and confer—they merely require the 30(b)(6) witness to apply WMATA's understanding of its own Guideline and Interpretive Aids to the ads presented at depositions.  That is information reasonably

available to a corporate representative.

Review panel deliberations are not necessary for the deposition to proceed. But, to the extent WMATA's designated witness wishes to consult with the review panel before the deposition to get an understanding of how it might view a particular ad, the witness can do so. WMATA can anticipate the ads that Plaintiff will ask about by looking at the questions asked in Georgetta Nicol deposition. Any designated 30(b)(6) witness is free to consult in advance with anyone at WMATA, including its review panel members, its general manager, or its lawyers who drafted the Interpretive Aids, to gather information necessary to answer questions on WMATA's behalf. WMATA could also designate the current members of the review panel to answer questions on its behalf. But it cannot avoid answering these questions on the basis of some process-based objection about the need for panel deliberations.

If WMATA "does not know" how Guideline 9 and its Interpretive Aids would apply to particular ads without convening its review panel, there is no reason to allow its lawyers to argue that meaning and application in legal briefs. That WMATA itself does not know by reviewing its own Guidelines and Interpretive Aids how Guideline 9 would apply to a particular advertisement only reinforces this Court's prior determination that Guideline 9 is *incapable* of reasoned application.

Sincerely,

Caroline Wolverton
Counsel for Defendant Randy Clarke

Shannen Coffin
Counsel for Plaintiff Wallbuilder Presentations

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.